DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
**AKERMAN LLP**
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: darren.brenner@akerman.com
Email: thera.cooper@akerman.com

*Attorneys for Defendant Bank of America,*
*N.A., successor by merger to BAC Home*
*Loans Servicing, LP fka Countrywide Home*
*Loans, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ALESSI & KOENIG  LLC, a Nevada limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>RICHARD SILVERSTEIN, an individual; SANDRA SILVERSTEIN, an individual; COUNTRYWIDE HOME LOANS, INC., a foreign corporation; THE CITY OF RENO, a domestic government entity; WASTE MANAGEMENT OF NEVADA, INC., a domestic corporation; DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, a domestic corporation, DOES INDIVIDUALS I-X, inclusive, and ROE CORPORATIONS XI-XXX, inclusive<br><br>            Defendants. | Case No.: 3:15-cv-00520-RCJ-WGC<br><br><br>**BANK OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |
| BANK OF AMERICA, N.A.,<br><br>            Counter/Cross Claimant,<br><br>v.<br><br>ALESSI & KOENIG LLC, a Nevada limited liability company; SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company; DOUBLE DIAMOND RANCH MASTER ASSOCIATION, a Nevada entity; Does 1 through 10; and ROES 1 through 10, inclusive,<br><br>            Counter/Cross-Defendant | |

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

42318197;1

SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,

        Counterclaimant/Cross-claimant,

v.

BANK OF AMERICA, N.A.; UNITED STATES OF AMERICA; NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; and RICHARD SILVERSTEIN, an individual; SANDRA SILVERSTEIN, an individual; DOES 1 through 10, and ROE BUSINESS ENTITIES 1 through 10, inclusive,

        Counter/Cross-Claimant, Cross-Defendants.

Counter/Cross-Claimant and Cross-Defendant Bank of America, N.A. (**Bank of America**) moves for summary judgment on all claims in this matter.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**I. INTRODUCTION**</u>

SFR Investments Pool 1, LLC (**SFR**) contends it purchased the property at issue at a homeowners association's sale conducted under NRS 116.3116, *et seq.* (**HOA Lien Statute**) that extinguished Bank of America's existing deed of Trust, leaving it with title free and clear. Bank of America is entitled to summary judgment for several reasons.

**First**, the HOA Lien Statute is facially unconstitutional.  In *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), the Ninth Circuit ruled that the HOA Lien Statute is facially unconstitutional because it did not require associations to give mortgagees prior notice of the association's sale.  *Id.*, at 1158-59.  As a result, the HOA's sale could not have extinguished Bank of America's deed of trust.

**Second**, Even if the HOA Lien Statute were somehow constitutional, Bank of America is entitled to summary judgment because the super-priority amount of the HOA's lien was tendered prior to the foreclosure sale, thereby extinguishing that portion of the HOA's lien.  On May 31, 2017, the Nevada Court of Appeals held in *Bank of America, N.A. v. SFR Investments Pool 1, LLC* that Bank of America's super-priority tenders through Miles, Bauer, Bergstrom & Winters, LLP – the same tender at issue here – did not contain any impermissible conditions, and thus extinguished an association's

2

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

super-priority lien so long as the tendered amount was equal to, or greater than, the statutory super-priority amount. Consequently, to the extent the HOA's foreclosure sale was valid, the HOA could only convey an interest in the Property subordinate to the deed of trust.  Because SFR's property interest is junior to the deed of trust, its claims necessarily fail.

**Third**, Bank of America is entitled to summary judgment because the sale was commercially unreasonable as a matter of law.  The property was worth $245,000.00 but sold at the HOA's foreclosure sale for $15,000.00, a mere 6% of the subject property's fair market value.  As confirmed by the Nevada Supreme Court in S*hadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, Inc.*, 132 Nev. Ad. Op. 5, at 11 (Jan. 28, 2016), a sale for less than 20% of a property's fair market value is commercially unreasonable, and an additional showing of fraud, oppression, or unfairness is not required.

**Finally**, SFR cannot hide behind the bona fide purchaser doctrine, because it had inquiry notice of BANA's tender, and is a sophisticated real estate investment entity that knew title to the Property was clouded. Accordingly, this Court should grant summary judgment in BANA's favor.

## II. STATEMENT OF UNDISPUTED FACTS

1.      On or about April 25, 2005, Richard and Sandra Silverstein (**Borrowers**) purchased the real property located at 1621 Caliterra Way, Reno, Nevada 89521 (**Property**) by way of a Note in the amount of $368,000, the repayment of which was secured by a deed of trust.  On April 28, 2005, the deed of trust in favor of Countrywide Home Loans, Inc. was recorded. Bank of America is the successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans, Inc.  A true and correct copy of the Deed of Trust is attached as **Exhibit A**.[1]

2.      On March 30, 2010, Alessi & Koenig, LLC (**Alessi**), as agent for Double Diamond Ranch Master Association (the **HOA**), recorded a Notice of Delinquent Assessment Lien.  **Exhibit B**.

3.      In response to the HOA's Notice of Delinquent Assessment Lien, on June 7, 2010, Bank of America, through counsel at Miles Bauer Bergstrom & Winters, LLP (**Miles Bauer**), attempted to obtain the super-priority amount from Alessi, which signified the maximum amount the HOA could claim had super-priority over the deed of trust.  **Exhibit C-1**.

---

[1]Bank of America respectfully requests that the Court take judicial notice of all recorded documents.

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

4.      In response to Miles Bauer's letter, on August 3, 2010, Alessi sent an account statement indicating that the last nine months of assessments were $270.00.  **Exhibit C-2**.  The ledger showed there were no nuisance and abatement charges owed to the HOA. *Id.*

5.      On August 20, 2010 Bank of America, through Mile Bauer offered payment to satisfy the super-priority portion of the lien enclosing a check for $270.00 (**Exhibits C-3**).

6.      Alessi rejected Bank of America's super-priority tender because it did not include "reasonable cost[s] of collection" in the payment. *See* Deposition of David Alessi at Ex. B attached as **Exhibit D-1**.

7.      Alessi's contract with the HOA required it to accept partial payments and allocate the payments to the HOA. *Id*. at **D-2**.

8.      Section 5.9.1 of the HOA's CC&Rs provided the HOA's "lien shall be prior to all other liens and encumbrances on such Lot, except for: … (c) a First Mortgage recorded before the date on which the  Assessment sought to be enforced became delinquent. The lien created by this Master Declaration for unpaid Assessments is also prior to a First Mortgage to the extent of the amount of such Assessment which would have become due in the absence of acceleration during the six (6)-month period immediately preceding institution of an action to enforce the lien securing such amount, without accelerations." *Id*. at **D-3**.

9.      Section 2 of the HOA's Supplemental Rules and Regulations requires the HOA to accept partial payments. *Id* at **D-4**.

10.      Instead, the HOA, through Alessi, recorded a Notice of Default and Election to Sell on May 3, 2012.  **Exhibit E**.

11.      The HOA, through Alessi, recorded a Notice of Trustee Sale on March 13, 2013, setting the date of sale for April 4, 2013.  **Exhibit F**.

12.      The HOA, through Alessi, non-judicially foreclosed on the Property on April 4, 2013 and recorded a Foreclosure Deed on May 2, 2013, stating that it sold the HOA's interest in the Property to SFR for $15,000.00.  **Exhibit G**.

13.      At the time of the sale the fair market value of the Property was $245,000.  **Exhibit H**. The purchase price at the HOA sale was 6% of the Property's fair market value at the time of the sale.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

### III. STANDARD OF REVIEW

Summary judgment is proper when there is no issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  After the movant has carried its burden to identify issues where there is no genuine issue of material fact, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment must be granted if "the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995).

### IV. LEGAL DISCUSSION

**A. BANK OF AMERICA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE STATE FORECLOSURE STATUTE IS FACIALLY UNCONSTITUTIONAL.**

**1.    *Bourne Valley makes clear that the HOA Lien Statute's opt-in notice scheme is unconstitutional.***

The Ninth Circuit's decision in *Bourne Valley* is controlling authority, requiring this Court hold the HOA's foreclosure sale did not extinguish the deed of trust.  *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) (a federal court of appeals decision "binds all [federal district] courts within a particular circuit" (internal citation omitted)); *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010) ("When a provision is struck down as unconstitutional, 'it is treated as if it had never been passed.'" (internal citation omitted)).

Under the HOA Lien Statute, an association's lien is split into two pieces: a super-priority piece—a maximum of nine months of unpaid association dues—and a sub-priority piece.  *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. Adv. Op. 75, 334 P.3d 408, 411 (2014). Foreclosure of the former can extinguish a senior deed of trust.  *Id.*, at 410-14.  Foreclosure of the latter would extinguish only junior deeds of trust.  For those reasons, it is critical that mortgagees receive prior notice of a pending association sale and the amount of the super-priority lien; otherwise, mortgagees would have no ability to protect their interests.  Before it was amended in 2015, however, the HOA Lien Statute required associations to give notice of a pending sale only to mortgagees who specifically requested it.  As the Ninth Circuit found, "[e]ven though such foreclosure forever

5

extinguished the mortgage lenders' property rights, the Statute contained 'opt-in' provisions requiring that notice be given only when it had already been requested." *Bourne Valley*, 832 F.3d at 1158.[2]  This meant that "despite that only the homeowners' association knew when and to what extent a homeowner had defaulted on her dues, the burden was on the mortgage lender to ask the homeowners' association to please keep it in the loop regarding the homeowners' association's foreclosure plans." *Id.*

In *Bourne Valley*, the Ninth Circuit held that the HOA Lien Statute violated mortgagees' due process rights and was facially unconstitutional because this opt-in notice scheme—consisting of NRS 116.31163, 116.31165, and 116.31168—impermissibly shifted the burden to mortgagees by requiring them to affirmatively request notice before their property rights were "forever extinguished." *Id.*, at 1158-59.  As the Ninth Circuit noted, "[i]t did so without regard for:  (1) whether the mortgage lender was aware that the homeowner had defaulted on her dues to the homeowners' association, (2) whether the mortgage lender's interest had been recorded such that it would have been easily discoverable through a title search, or (3) whether the homeowners' association had made any effort whatsoever to contact the mortgage lender." *Id.*, at 1159.  In finding that the HOA Lien Statute violated due process, the Ninth Circuit explicitly considered and rejected an argument that NRS 116.31168(1) mandated notice by incorporating provisions of NRS 107.090.  *Id.*  If NRS 116.31168(1) required mandatory notice to all first lien holders, the request-notice provisions of NRS 116.31163 and NRS 116.311635 would be superfluous and would have had no meaning on the date of enactment.[3]  *See id.*

---

[2]  *See also* NRS 116.31163 (notice to "person who has requested notice" and to holder of security interest who "has notified the association"); NRS 116.311635(b) (notice to person entitled to receive notice under NRS 116.31163 and holder of security interest who "has notified the association"); NRS 116.31168 (in section titled in part "[r]equests by interested persons for notice of default" providing that a "request must identify" specific information to be valid).  *But see, e.g., G & P Inv. Enters., LLC v. Mortg. Elec. Registration Sys., Inc.*, Case No. 68842, at 1 n.1 (Nev. Mar. 17, 2017).

[3]  Moreover, both NRS 116.31168(1) and NRS 107.090 are explicitly request-notice provisions.  Section 116.31168 is entitled "Foreclosure of liens: Requests by interested persons for notice of default and election to sell[.]"  *See Banegas v. State Indus. Ins. Sys.*, 117 Nev. 222, 226, 19 P.3d 245, 250 (2001) ("The title of a statute may also be considered in determining legislative intent.").  The second sentence—one of two—of NRS 116.31168(1) reads: "The request must identify the lien by stating the names of the unit's owner and the common-interest community."  Finally, NRS 107.090's title uses the word "request" three times: "Request for notice of default and sale; Recording and contents; mailing of notice; request by homeowner's association; effect of request."  The text of NRS 107.090 uses the term "request," "requested," or "requesting" fourteen

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

2.      *Under Bourne Valley, the HOA's foreclosure could not have extinguished the Deeds of Trust.*

Here, the HOA's foreclosure sale could not have extinguished the Deeds of Trust because the HOA's sale was performed under a facially unconstitutional statute.  *See, e.g.*, *In re Pontes*, 280 B.R. 20, 34-35 (Bankr. D.R.I. 2002) (transfer of a taxpayer's property right to third party was "void" where the state's tax sale statute was unconstitutional because it failed to require notice to the taxpayer of his right of redemption), *aff'd*, 310 F. Supp. 2d 447 (D.R.I. 2004).  As an initial matter, in *Bourne Valley*, the Ninth Circuit did not find that the HOA Lien Statute as applied in that case violated due process; instead, it found the HOA Lien Statute <u>unconstitutional on its face</u>.  "A successful facial attack invalidates a law in all of its applications, 'forbidding' any enforcement of it."  *Platinum Sports Ltd. v. Snyder*, 715 F.3d 615, 617 (6th Cir. 2013) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).  "[A] successful facial attack means the statute is wholly invalid and cannot be applied to *anyone*.  [The] law, if unconstitutional, is unconstitutional without regard to its application."  *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011).

In mounting its facial challenge in the Ninth Circuit, Wells Fargo invoked "'a species of third party (*jus tertii*) standing' by which a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question.'"  *Thibodeau v. Portuondo*, 486 F.3d 61, 71 (2d Cir. 2007) (citation omitted).  And when it prevailed in *Bourne Valley*, Wells Fargo prevailed not only on behalf of itself but also all others impacted by the HOA Lien Statute, including Bank of America here.  Thus, to succeed here, Bank of America does not need to re-establish that the HOA Lien Statute violates due process; instead, it must only show that its property rights were extinguished pursuant to the HOA Lien Statute—a statute that has already been declared unenforceable and unconstitutional on its face.  After all, the Ninth Circuit's ruling that the HOA Lien Statute is facially unconstitutional would be rendered meaningless if each mortgagee, such as Bank of America, was forced to litigate anew the due process question even after *Bourne Valley*, and lower courts were free to deviate from the Ninth Circuit's determination that the law was unconstitutional on its face.

---

times.  As the Ninth Circuit held, there is simply no way to rationally read NRS 116.31168(1)'s incorporation of NRS 107.090 as incorporating a mandatory notice provision.  *See Bourne Valley*, 832 F.3d at 1159.

42318197;1

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Moreover, the facially unconstitutional HOA Lien Statute is not "cured" if Bank of America had actual notice of the sale.  Specifically in the context of due process challenges, the Ninth Circuit has consistently rejected the argument that an actor can cure a statute that has been declared facially unconstitutional by voluntarily providing more process than the statute requires.  *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 789 (9th Cir. 2014) (where statute failed to provide for individualized determination before setting bail, declining to consider whether officials might decide to provide such determination voluntarily and holding entire statute unconstitutional).  As such, actual notice does not alter the unavoidable conclusion that the HOA's sale was conducted pursuant to a *facially* unconstitutional statute, and thus could not have extinguished the deed of trust.

### 3. The Nevada Supreme Court's recent decision in Saticoy Bay does not impact this Court's analysis.

The Nevada Supreme Court's recent decision in *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage*, 388 P.3d 970 (Nev. 2017), does not compel a different result.  First, it is axiomatic that the "decision of [a state's highest court] construing the Constitution of the United States . . . is not binding upon the federal courts."  *Watson v. Estelle*, 886 F.2d 1093, 1095 (9th Cir. 1989).[4]  The controlling precedent on federal constitutional questions is the Ninth Circuit's decision in *Bourne Valley*.  *See Hart*, 266 F.3d at 1170.  In *Saticoy Bay*, the Nevada Supreme Court rejected a facial challenge to the HOA Lien Statute, but its holding turned on an issue of federal law:  whether the Nevada Legislature's enactment of the HOA Lien Statute satisfies the "state action" requirement to launch a federal due process challenge.  *Saticoy Bay*, 388 P.3d at 973.  There, the Nevada Supreme Court found that the Nevada Legislature's "enactment of [the HOA Lien Statute] does not implicate due process absent some additional showing that the state compelled the HOA to foreclose on its lien, or that the state was involved with the sale."  *Id.*  But in *Bourne Valley*, the Ninth Circuit addressed this same issue and determined that the "state action" requirement was satisfied because "[a]bsent

---

[4]     *See also Sw. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 152 (5th Cir. 1980) (Fifth Circuit was not bound by the Texas Supreme Court's federal due process analysis); *Doelman v. Karl-Heinz*, No. 2:14-CV-0339-RCJ, 2014 WL 2197640, at *3 (D. Nev. May 27, 2014) (rejecting the argument that the district court was bound to follow a state's highest court's interpretation that a state law did not violate the due process clause of the Fourteenth Amendment).

operation of the [HOA Lien Statute]," which was enacted by the Nevada Legislature, "Wells Fargo would have had a fully secured interest in the Property," and "[a] foreclosure by a homeowners' association would not have extinguished Wells Fargo's interest." *Bourne Valley*, 832 F.3d at 1160.

Here, given what constitutes "state action" for federal due process purposes is a matter of federal law, there is no question that this Court must follow *Bourne Valley*—not *Saticoy Bay*—on this issue. *See Watson*, 886 F.2d at 1095 ("[A] decision of [a state's highest court] construing the Constitution of the United States . . . is not binding upon the federal courts."); *see also Bank of America, N.A. v. BTK Properties LLC*, No. 2:16-cv-01558-JCM-PAL, 2017 WL 774913, at *2 (D. Nev. Feb. 28, 2017) ("[NRS 116] is inconsistent with the due process clause of the federal Constitution. Thus, *Bourne Valley* is binding on this court."); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1012 (9th Cir. 2004) ("It is well established that a state court's interpretation of its statutes is binding on the federal courts unless a state law is inconsistent with the federal Constitution.").

Moreover, this Court recently rejected the argument that a state court ruling on this federal issue is in any way binding on this Court. *Bank of New York Mellon v. Highland Ranch Homeowners Association, et al.*, No. 3:16-cv-00436-RCJ-WGC, Dkt. 52, at pp. 5-6 (D. Nev. May 23, 2017). This Court correctly found that ". . . state court rulings on federal issues (i.e., the constitutionality of NRS Chapter 116 under the U.S. Constitution) are only potentially persuasive authority. The Ninth Circuit's rulings are binding on this Court." *Id.* at p. 6. No intervening change in the law between May 23, 2017 and the date of this filing requires any different analysis.

Because the HOA Lien Statute is facially unconstitutional, the HOA's foreclosure sale could not extinguish the deed of trust. Accordingly, Bank of America is entitled to summary judgment.

## B. BANK OF AMERICA IS ALSO ENTITLED TO SUMMARY JUDGMENT BECAUSE IT TENDERED THE SUPER-PRIORITY AMOUNT OF THE HOA LIEN PRIOR TO THE HOA SALE.

If this Court does not hold that Bank of America is entitled to summary judgment based on the HOA Lien Statute's facial unconstitutionality, Bank of America is entitled to summary judgment because its super-priority tender extinguished the HOA's super-priority lien before the foreclosure sale. Bank of America tendered the undisputed super-priority amount of the HOA's lien to Alessi

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

before the foreclosure sale. Alessi's rejection of the tender, despite an obligation to accept the payment, because the checks did not include collection fee does not negate the effect of Bank of America's tender. Further, the letters accompanying the tender made clear the tender was unconditional, and thus effective to extinguish the HOA's super-priority lien.

### 1. Bank of America tendered the exact super-priority amount to Alessi.

The Nevada Supreme Court has confirmed that an association's super-priority lien is limited to nine months of delinquent assessments. *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 132 Nev. Adv. Op. 35, 373 P.3d 66, 73 (2016) ("[W]e conclude the superpriority lien … is limited to an amount equal to the common expense assessments due during the nine months before foreclosure.") (cited for this proposition in *Bank of America*, Case No. 70501, at 4). In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, the Nevada Supreme Court stated that a mortgagee's pre-foreclosure tender of the super-priority amount prevents the deed of trust from being extinguished. 334 P.3d 408, 414 ("[A]s junior lienholder, [the holder of the first deed of trust] could have paid off the [HOA] lien to avert loss of its security[.]"); *id.*, at 413 ("[S]ecured lenders will most likely **pay the [9] months' assessments** demanded by the association **rather than having the association foreclose on the unit**.") (emphasis added). The Nevada Real Estate Division has likewise concluded that tendering the super-priority portion of an association's lien discharges that lien. *See* December 12, 2012 NRED Advisory Opinion No. 13-01, at 11 (stating that tender of super-priority abatement charges "relieves their super priority lien status."). Coupling the Nevada Supreme Court's holdings in *SFR Investments* and *Ikon Holdings* shows that a mortgagee's tender to an association of nine months' delinquent assessments extinguishes the association's super-priority lien.

Bank of America took that exact action in this case. To satisfy the super-priority portion of the HOA's lien, Bank of America, through Miles Bauer, sent a letter to Alessi, seeking to determine the super-priority lien amount and offering to pay the same. **Exhibit C-1**. Alessi refused to provide a super-priority payoff quote, instead providing the Borrower's HOA Statement of Account and demanding that Bank of America pay off the HOA's entire lien, including the portion that was subordinate to the First Deed of Trust. **Exhibit C-2**. The Statement of Account, however, showed the HOA's monthly assessments were $30.00 each, meaning the statutory super-priority amount of

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1    the HOA's lien was $270.00, or $30.00 multiplied by 9.  *Id.*; *see Ikon Holdings*, 373 P.3d at 73.

2    Accordingly, Bank of America, sent Alessi a check for $270.00 on August 20, 2010.  **Exhibit C-3, 4**.

3    Alessi unjustifiably rejected Bank of America's super-priority payment, and returned the check

4    because the check did not included collection fees.  **Exhibits C-4, 5 and D-1**.  Even though the HOA's

5    CC&Rs did not include collection costs in its definition of the super-priority portion of the lien

6    excluded collection cost and the collection policy required Alessi to accept the payment. *See* **Exhibits**

7    **D-3 and 4**. Regardless Alessi's rejection of Bank of America's tender, that payment still discharged

8    the super-priority lien under the tender doctrine.

9    <center>**2.   *Bank of America's unconditional tender discharged the super-priority lien.***</center>

10   The tender doctrine is designed "**to enable the debtor to** … relieve his property of

11   encumbrance by **offering his creditor** all that he has any right to claim," which "does not mean that

12   the debtor must offer an amount beyond reasonable dispute, but it means **the amount due, — actually**

13   **due**." *Dohrman v. Tomlinson*, 399 P.2d 255, 258 (Id. 1965) (emphasis added).  Tender is complete

14   when "the money is offered to a creditor who is entitled to receive it." *Cladianos v. Friedhoff*, 69

15   Nev. 41, 45, 240 P.2d 208, 210 (1952); *see also Ebert v. W. States Refining Co.*, 75 Nev. 217, 222,

16   337 P.2d 1075, 1077 (1959) (enforcing option contract where corporation offered to pay full amount

17   to exercise option).  After the money owed is offered to the creditor, "nothing further remains to be

18   done, and the transaction is completed and ended." *Cladianos*, 69 Nev. at 45.

19   A tender is not rendered ineffective by the tendering party's demand for matters to which it is

20   entitled.  "[The definition of tender] is more precisely stated as an offer of payment that is coupled

21   either with no conditions or only **with conditions upon which the tendering party has a right to**

22   **insist**." *Fresk v. Kraemer*, 337 Or. 513, 522, 99 P.3d 282, 287 (2004) (emphasis added).  Thus, "[a]

23   tender of payment may be conditional as long as the attached condition is one on which the tenderer

24   has the right to insist." *Millhollin v. Conveyor Co.*, 287 Mont. 377, 383, 954 P.2d 1163, 1166 (1998);

25   *Dull v. Dull*, 138 Ariz. 357, 359, 674 P.2d 911, 913 (Ariz. Ct. App. 1983).  For example, conditioning

26   tender on release from further liability on the recipient's claim does not prevent an effective tender.

27   *See Fresk*, 99 P.3d at 287 (finding that under a statute precluding an attorney's fee award to a party

28

<center>11</center>

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  to whom full damages were tendered prior to litigation, tender was not invalidated by conditioning

2  payment upon a release of liability).

3      The Nevada Court of Appeals recently held that Bank of America's super-priority tender

4  checks— accompanied by the very same Miles Bauer letter that Bank of America's super-priority

5  tender here – did not contain any impermissible conditions.  *Bank of America, N.A. v. SFR Investments*

6  *Pool 1, LLC*, Case No. 70501, at 4 (Nev. Ct. App. May 31, 2017).  The Court of Appeals noted that

7  Bank of America's tender through Miles Bauer simply "indicated that it represented nine months'

8  worth of HOA assessments and that the HOA's acceptance of the tender would act as a complete

9  resolution of the HOA's superpriority lien."  *Id.*, at 3.  Explaining that *Ikon Holdings* confirmed that

10  an association's super-priority lien was limited to nine months' assessments, as Miles Bauer noted in

11  its letter, the Court held that "Bank of America had a right to insist that acceptance of the nine months'

12  worth of HOA assessments would result in the satisfaction of the HOA's superpriority lien as that

13  condition comported with the law."  *Id.*, at 4.  The Court of Appeals thus "conclude[d] that, to the

14  extent [Bank of America's] tender was conditional, Bank of America had a right to insist on the given

15  condition," meaning "the district court's finding that Bank of America's tender was insufficient solely

16  because it was conditional is incorrect."  *Id.*, at 3-4.

17      Federal courts in Nevada have also held that Bank of America's super-priority tender checks—

18  similarly accompanied by the very same Miles Bauer letters that accompanied Bank of America's

19  super-priority tender here—were unconditional tenders.  *U.S. Bank, N.A. v. SFR Investments Pool 1,*

20  *LLC*, 2016 WL 4473427 at *6 (D. Nev. Aug. 24, 2016) (rejecting the foreclosure-sale purchaser's

21  argument that Bank of America's super-priority tender was conditional, explaining that "a reasonable

22  jury could not interpret the evidence that way.");  *U.S. Bank, N.A. v. Bacara Ridge Assoc.*, 2016 WL

23  5334655 at *3 (D. Nev. Sep. 22, 2016) (same);  *U.S. Bank, N.A. v. Emerald Ridge Landscape*

24  *Maintenance Ass'n*, 2:15-cv-00117-MMD-PAL (D. Nev. Sep. 30, 2016).  In *Emerald Ridge*, the court

25  explained that the Miles Bauer tender letters were not conditional because accepting the tender did

26  not require the association or its collection agent to "take any actions or waive any rights," explaining:

27         The language Miles Bauer included with their cashier's check states that
28         Miles Bauer, and presumably their client, will understand endorsement
       of the check to mean they have fulfilled their obligations.  It simply

delineates how the tenderer will interpret the action of the recipient (which also turned out to be the correct interpretation of the law). It does not require [the association's trustee] to take any actions or waive any rights. And it does not depend on an uncertain event or contingency.

*Emerald Ridge*, 2:15-cv-00117-MMD-PAL, at 7.[5] Because Bank of America's super-priority tender was unconditional, the *Emerald Ridge* Court held the tender "was proper," meaning the tender extinguished the super-priority portion of the association's lien. *Id.*

The tender facts in this case are identical to the tender facts in *U.S. Bank*, *Bacara Ridge*, and *Emerald Ridge*, where courts held that Bank of America's super-priority tenders were unconditional tenders that extinguished the associations' super-priority liens even though the tenders were unjustifiably rejected. Examining the language of these Miles Bauer letters proves the *U.S. Bank*, *Bacara Ridge*, and *Emerald Ridge* Courts were correct.

The language contained in the Miles Bauer tender letters do not affect the validity of tender because the letters do not impose "an unwarranted condition." *See* **Exhibits C and D-1**. In fact, they do not impose any condition. *See Unconditional*, Black's Law Dictionary (10th ed. 2014) ("Not limited by a condition; not depending on an uncertain event or contingency; absolute."). The letters simply state that Bank of America will interpret the acceptance of its tender to represent the HOA's acceptance Bank of America has fulfilled its super-priority obligations as holder of the first deed of trust. The tender did not require the HOA or Alessi to take any action or waive any rights, and it did not depend on an uncertain event or contingency.

Bank of America's first letter to Alessi made clear Bank of America sought to pay off only the super-priority portion of the HOA's lien, first explaining that under NRS 116.3116(b), the majority of the HOA's lien was junior to the First Deed of Trust, although the HOA's "lien is prior to a first security interest to the extent of the assessments for common expenses which would have become due during the 9 months before institution of the action to enforce the lien." **Exhibit C-1**. After explaining NRS 116.3116's split-lien system, Bank of America offered to pay off **only** the super-priority portion of the lien to protect the First Deed of Trust, stating:

[A] portion of your HOA lien is arguably senior to [Bank of America]'s first deed of trust, specifically **the nine months of assessments for**

---

[5]     A copy of this Summary Judgment Order is attached as **Exhibit I**.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

13

42318197;1

**common expenses** incurred before the date of your notice of delinquent assessment dated February 17, 2010.  For purposes of calculating the nine-month period, the trigger date is the date the HOA sought to enforce its lien.  It is unclear, based on the information known to date, what amount the nine months' of common assessments pre-dating the NOD actually are.  **That amount,** whatever it is, **is the amount [Bank of America] should be required to rightfully pay to fully discharge its obligations to the HOA** per NRS 116.3102 and **my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA**.

*Id.* (emphasis added).  This letter—which explains the portion of the lien that is senior to the First Deed of Trust, defines the correct calculation of that super-priority portion, and then offers pay **only** that super-priority amount—cannot be construed as anything other than an attempt to extinguish **only** the super-priority portion of the HOA's lien.

Bank of America's next letter to Alessi, which enclosed its $270.00 super-priority tender check, was similarly clear regarding the tender's limited purpose.  That letter began by noting that Alessi had demanded that Bank of America pay off the HOA's entire lien, even the portion that was subordinate to the First Deed of Trust.  (Exhibit E-1).  Bank of America thus reiterated that it wished to satisfy only the super-priority portion of the HOA's lien, stating that it "is the beneficiary/servicer of the first deed of trust loan secured by the property and wishes to satisfy **its** obligations to the HOA." *Id.* (emphasis added).  The letter then rehashed NRS 116.3116's split-lien system before stating that "a portion of your HOA lien is arguably prior to [the] first deed of trust, specifically the nine months of assessments for common expenses incurred before the date of your notice of delinquent assessment." *Id.*  The letter next explicitly explained the purpose of Bank of America's super-priority check: "Our client has authorized us to make a payment to you in the amount of $270.00 … to satisfy **its obligations to the HOA as the holder of the first deed of trust against the property**." *Id.* (emphasis added).

By the letters' unequivocal terms, the $270.00 check: (1) was meant to extinguish the super-priority lien only, and would have no effect on the HOA's ability to collect and foreclose the sub-priority portion of its lien, as it clearly explained NRS 116.3116's split-lien dichotomy, and (2) would have no effect on the HOA's ability to collect assessments and fees from the deed of trust holder if that holder ever obtained title to the property through its own foreclosure sale, as the letter explicitly stated that the tender was meant to satisfy Bank of America's "obligations" only "as holder of the first

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

14

deed of trust." *See id.* Bank of America's super-priority tender would not prejudice the HOA's right to collect or foreclose on the sub-priority portion of its lien when Bank of America spent almost half of each letter explaining NRS 116.3116's split-lien system, which makes the vast majority of the HOA's lien junior to the First Deed of Trust, and thus no threat to that Deed. *See* Restatement (Third) of Property (Mortgages) § 7.1 ("Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed.").

Extinguishing a lien by paying the undisputed lien amount in full is surely no "condition," and is in fact the purpose behind the tender doctrine, which allows junior lienholders to discharge senior liens by submitting full payment of that lien to the senior lienholder. *See Richardson v. Cont'l Grain Co.*, 336 F.3d 1103, 1107 (9th Cir. 2003) ("The condition of dropping a claim is implicit in all tenders because they are made 'to satisfy a debt or obligation.' A tender is called an 'unconditional' offer only because there are no additional conditions.") (internal citations omitted); *Dull*, 674 P.2d at 912 ("A tender is not conditional, however, if the condition is one which the person making the tender has a legal right to insist upon."). The tender doctrine is tailored for the exact fact pattern of this case— where a senior lienholder unjustifiably rejects a junior lienholder's full payment of the senior lien amount, the tender doctrine protects the junior lienholder from that unjustified rejection by operating to discharge the senior lien. *See Richardson*, 336 F.3d at 1107; *Dull*, 674 P.2d at 912.

Accepting Bank of America's super-priority tender would have done nothing to prejudice the rights of the HOA or Alessi in any way, as that tender was intended to extinguish only the super-priority portion of the HOA's lien. Because Bank of America's tender was unconditional, the tender discharged the HOA's super-priority lien, meaning the HOA's foreclosure sale did not extinguish the First Deed of Trust. *SFR Investments*, 334 P.3d at 414 ("[A]s a junior lienholder, [the holder of the first deed of trust] could have paid off the [HOA] lien to avert loss of its security[.]"); *id.*, at 413 ("As a practical matter, secured lenders will most likely pay the [9] months' assessments demanded by the association rather than having the association foreclose on the unit."); *Bank of America*, Case No. 70501, at 4; *Emerald Ridge*, 2:15-cv-00117-MMD-PAL, at 7. Accordingly, this Court should grant summary judgment in Bank of America's favor.

///

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**C.     IF THE HOA DID ATTEMPT TO FORECLOSE ON ITS SUPER-PRIORITY LIEN, THE SALE IS INVALID BECAUSE IT WAS COMMERCIALLY UNREASONABLE.**

If the HOA did in fact intend to foreclose on the super-priority portion of its lien despite all the evidence to the contrary, then the sale of the Property for $15,000.00 was commercially unreasonable. The Nevada Supreme Court has held that an association's foreclosure sale must be set aside if the sale fetched an inadequate price and there is evidence of "fraud, unfairness, or oppression." *Shadow Wood*, 366 P.3d at 1114.  The Supreme Court cited to the Restatement (Third) of Property (Mortgages) in *Shadow Wood*, which states that under the gross inadequacy standard: "a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." Section 8.3 cmt. b. Further, "in extreme cases a price may be so low (typically well under 20% of fair market value) that it would be an abuse of discretion for the court to refuse to invalidate it." *Id.*

Here, the HOA sold the Property for 6**%** of its fair market value at the foreclosure sale, just more than ¼ of the 20% of fair market value the *Shadow Wood* Court explained would be "grossly inadequate as a matter of law." (Exhibit J and Exhibit K).  Bank of America produced expert testimony showing the Property's fair market value at the time of the foreclosure sale was $245,000.00. (Exhibit K).  The HOA foreclosure-sale price was $15,000.00.  (Exhibit J).  Dividing the sales price by the fair market value at the time of the sale shows the Property was sold for 6% of its fair market value.  The foreclosure-sale price is thus grossly inadequate as a matter of law.

Coupling this grossly inadequate price with the clear unfairness of the sale shows the sale was commercially unreasonable to the extent the HOA purported to foreclose on its super-priority lien.  As discussed above, Bank of America submitted payment for the undisputed super-priority amount of the HOA's lien to Alessi before the foreclosure sale, which the Alessi ostensibly rejected because it did not believe the HOA's super-priority lien came into existence until the Deed of Trust was foreclosed. To the extent the HOA purported to foreclose on the super-priority lien after Alessi rejected Bank of America's pre-foreclosure payment for the exact amount of that lien, the sale was unfair, and due to be set aside as commercially unreasonable.

Moreover, the HOA and Alessi's choice to foreclose on the sub-priority lien directly brought about the grossly inadequate price.  As discussed above, the evidence in this case clearly indicates that

16

1  the HOA and Alessi intended to foreclose on the sub-priority portion of the HOA's lien.  The sale of

2  an interest in the Property encumbered by the Deed of Trust is worth far less than title to the Property

3  free and clear.   Consequently, if construed as a super-priority sale, the sale was commercially

4  unreasonable because conducting the sale as a sub-priority foreclosure resulted in a $15,000.00 sale

5  price, which was grossly inadequate for an unencumbered interest in the Property worth $245,000.00

6  at the time of the sale.  (Exhibit J and Exhibit K).

7          The record evidence shows the HOA did not foreclose on its super-priority lien, which means

8  SFR's interest in the Property is subject to Bank of America's Deed of Trust.  To the extent the HOA

9  actually purported to foreclose on its super-priority lien, the sale is void as commercially unreasonable

10  based on the grossly inadequate sales price coupled with the unfairness of (1) foreclosing on a super-

11  priority lien after rejecting Bank of America's payment of the exact super-priority amount, and (2)

12  giving super-priority effect to a sale that was conducted as a sub-priority foreclosure.  Under either

13  scenario, Bank of America's Deed of Trust survived the HOA's foreclosure sale, and summary

14  judgment should be granted in Bank of America's favor.

**D.  SFR'S INTEREST IN THE PROPERTY, IF ANY, IS SUBJECT TO BANK OF AMERICA'S DEED OF TRUST.**

16          SFR's interest in the Property is subject to the Deed of Trust regardless of whether it is a bona

17  fide purchaser, as the bona fide purchaser doctrine cannot elevate an HOA-sale purchaser's

18  encumbered interest to title free and clear where the HOA foreclosed on its sub-priority lien.  Even if

19  bona fide purchaser status could provide a windfall to an HOA-sale purchaser after a sub-priority sale,

20  SFR is not entitled to that windfall because it is not a bona fide purchaser.

*1.  The bona fide purchaser doctrine cannot change the HOA's sub-priority foreclosure into a super-priority sale.*

23          The Nevada Supreme Court recently held that the bona fide purchaser doctrine is irrelevant in

24  cases where, like here, the senior mortgagee tendered the super-priority amount before the foreclosure

25  sale.  *Stone Hollow II*, 382 P.3d at 911.  While *Stone Hollow III* was vacated on separate grounds by

26  the *en banc* Nevada Supreme Court, the Court has not retreated from its holding that a valid super-

27  priority tender extinguishes an association's super-priority lien, and that whether the HOA-sale

28  purchaser is a bona fide purchaser is irrelevant in super-priority tender cases.

17

In *Stone Hollow*, the plaintiff purchased a property at an association's foreclosure sale and then filed suit against the mortgagee to quiet title. The trial court entered summary judgment in favor of Bank of America, and the HOA-sale purchaser appealed. *Stone Hollow Ave. Trust v. Bank of America, N.A.*, 2016 WL 1109167, at *1 (Nev. Mar. 18, 2016) (*Stone Hollow I*). On appeal, the Supreme Court initially reversed the trial court, finding that the trial court failed to consider the HOA-sale purchaser's bona fide purchaser status. *Id.* Bank of America moved for rehearing, arguing that its super-priority tender discharged the super-priority lien, rendering inapplicable equitable doctrines like bona fide purchaser. The three-judge panel agreed – reversing its prior ruling and affirming the trial court's grant of summary judgment in Bank of America's favor. *Stone Hollow II*, 2016 WL 4543202 at *1. The *Stone Hollow II* Court held that the association's rejection of the full super-priority tender was "unjustified" and "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien." *Id.* Whether the HOA-sale purchaser was a bona fide purchaser was irrelevant. *Id.*

Following *Stone Hollow II*, the HOA-sale purchaser filed a petition for reconsideration *en banc*. Without disturbing the three-judge panel's holdings regarding the legal effect of a valid tender or the irrelevance of the bona fide purchaser doctrine, the Supreme Court vacated its order and again reversed the trial court, this time solely on the grounds that there was a sufficient factual dispute over the legal adequacy of the tender to preclude summary judgment. *See Stone Hollow Avenue Trust v. Bank of America, N.A.,* 391 P.3d 760 (Nev. Dec. 21, 2016) (*Stone Hollow III*).[6] Notably, in the dissent, Justice Pickering wrote that the Court's previous order should not be reconsidered based on tender because the HOA-sale purchaser had not argued against the adequacy of tender, but rather had solely raised the issue of whether it was a bona fide purchaser. Justice Pickering made clear that "appellant's putative bona fide purchaser status is irrelevant under [the] prevailing view" that "a tender of the lien amount invalidates a foreclosure sale to the extent that the sale purports to extinguish the tenderer's interest in the property." *Id.* (citing to 1 Grant S. Nelson, Dale A. Whitman, Ann M. Burkhart & R. Wilson Freyermuth, *Real Estate Finance Law* § 7:21 (6th ed. 2014)). The *Stone Hollow* Trilogy makes

---

[6]      A copy of this Order is attached as **Exhibit J**.

42318197;1

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

clear the bona fide purchaser doctrine does not protect SFR from the legal effect of Bank of America's tender or the HOA's decision to foreclose on its sub-priority lien here.

### 2.   SFR is not a bona fide purchaser.

Even if bona fide purchaser status could somehow change the HOA's sale from a sub-priority foreclosure to a super-priority foreclosure, that is irrelevant here, as SFR is not bona fide purchaser. The burden of establishing bona fide purchaser status rests with the party claiming such status – here, SFR. *Berge v. Fredericks*, 95 Nev. 183, 185, 591 P.2d 246, 248 (1979) (explaining that the putative bona fide purchaser "was required to show that legal title had been transferred to her before she had notice of the prior conveyance to appellant"). SFR cannot meet this burden because (1) provisions in Bank of America's Deed of Trust put it on inquiry notice that the Deed of Trust beneficiary could pay off association liens that attained priority over the Deed of Trust, and it failed to satisfy its duty of inquiry, and (2) SFR is a sophisticated real estate investor with knowledge that it was purchasing a property interest subject to an encumbrance.

### a.   SFR had inquiry notice of Bank of America's super-priority tender.

A subsequent purchaser is bona fide under common-law principles if it takes property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Shadow Wood*, 366 P.3d at 1115 (citing *Bailey v. Butner*, 64 Nev. 1, 19, 176 P.2d 226, 234 (1947)). Under Nevada law, "[c]onstructive notice is that which is imparted to a person upon strictly legal inference of matters which he necessarily ought to know, or which, by the exercise of ordinary diligence, he might know." *Shadow Wood*, 366 P.3d at 1115 (quoting *Allison Steel Mfg. Co. v. Bentonite, Inc.*, 86 Nev. 494, 497, 471 P.2d 666, 668 (1970)).

A party cannot qualify as a bona fide purchaser if it was under a duty of inquiry that it failed to discharge before purchasing the property at issue. *Berge*, 95 Nev. at 189. The *Berge* Court explained that this duty arises:

> when the circumstances are such that a purchaser is in possession of facts which would lead a reasonable man in his position to make an investigation that would advise him of the existence of prior unrecorded rights. He is said **to have constructive notice of their existence** whether he does or does not make the investigation. The authorities are unanimous in holding **that he has notice of whatever the search would disclose**.

*Id.* (emphasis added).  The Nevada Supreme Court has clarified that "[a] recital in an instrument of record charges subsequent purchasers with notice of all material facts which an inquiry suggested by that recital would have disclosed." *Allison Steel*, 86 Nev. at 498.  "When **anything** appears in" an instrument of record "sufficient to put a prudent man on inquiry which if prosecuted with ordinary diligence would lead to actual knowledge of **some right or title in conflict with the title he is about to purchase**, it is his duty to make inquiry, and **if he does not do so he is chargeable with actual knowledge of what the inquiry would have disclosed**." *Id.* (emphasis added).  A purchaser "put upon inquiry may rebut the presumption of notice by showing that he made due investigation without discovering the prior right or title he was bound to investigate." *Berge*, 95 Nev. at 189.

Here, the recorded Deed of Trust contains a Planned Unit Development Rider with the following provision, which put SFR on inquiry notice of Bank of America's super-priority tender: "If Borrower does not pay [HOA] dues and assessments when due, **then Lender may pay them**." (**Exhibit A**) (emphasis added).  Whether SFR actually knew of Bank of America's tender is thus irrelevant, as it was under a duty to inquire if Bank of America had tendered, and it is "charge[d] … with notice of all material facts which" this inquiry would have disclosed.  *See Allison Steel*, 86 Nev. at 498.  Here, a simple inquiry would have disclosed Bank of America's super-priority tender, and SFR is thus charged with actual knowledge of the tender unless it "made a due investigation without discovering" the tender.  *See Berge*, 95 Nev. at 189.

*Allison Steel* is directly on point.  In that case, an individual purchased a property at a tax lien foreclosure (the **First Purchaser**), but failed to record the certificate of sale from that tax lien foreclosure until two years later.  *Id.*, at 496.  After the tax sale, but before the certificate of sale was recorded, another entity purchased the same property at the foreclosure sale of a judgment lien (the **Second Purchaser**).  *Id.*  At the time of the second purchase, the tax lien that was foreclosed in the first purchase was still recorded in the land records, as it had not been released.  *Id.*, at 497.  The Second Purchaser contended it was a bona fide purchaser because simply reviewing the land records before the judgment-lien foreclosure would not reveal the unrecorded certificate of sale, and thus would make it appear as if the tax lien had not been foreclosed.  *Id.*

///

42318197;1

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

The Nevada Supreme Court disagreed, holding that the recorded tax liens provided inquiry notice of the unrecorded certificate of sale to the Second Purchaser.  *Id.*, at 498.  While the certificate of sale was not recorded, the Nevada Supreme Court explained that the Second Purchaser had constructive notice of the recorded tax lien that was foreclosed, and thus could have simply made "an inquiry to the IRS [which] would have revealed the sale to" the First Purchaser.  *Id.*  Because the Second Purchaser had inquiry notice of the unrecorded certificate of sale through the recorded tax lien, the Nevada Supreme Court held he was not a bona fide purchaser, and thus was not protected from the unrecorded certificate of sale.  *Id.*

Just as the recorded tax lien put the Second Purchaser on inquiry notice of the unrecorded certificate of sale in *Allison Steel*, here the recorded Deed of Trust's provision stating that the Deed of Trust beneficiary could pay off association liens attaining priority over the Deed of Trust put SFR on inquiry notice of Bank of America's super-priority tender.  SFR's duty of inquiry required the level of investigation that a "reasonable man in his position [would make] that would advise him of the existence of prior unrecorded rights."  *See Berge*, 95 Nev. at 189.

A reasonable entity in SFR's position could take several simple steps to determine if any entity paid off the super-priority lien before the HOA's foreclosure sale.  Just as the Second Purchaser in *Allison Steel* could have inquired to the IRS regarding the status of the tax lien, SFR could have: (1) called Bank of America to inquire whether it tendered the super-priority amount; (2) called Alessi and inquired whether any entity had tendered the super-priority amount; (3) called the HOA to inquire whether any entity had tendered the super-priority amount; or (4) asked the auctioneer at the HOA sale whether any entity had tendered the super-priority amount.  If SFR did not wish to take any of these steps, it still had the option to obtain a title insurance commitment before purchasing the Property, thereby mitigating any risk of receiving encumbered title.

But like the Second Purchaser in *Allison Steel*, SFR took none of these steps, instead choosing to do absolutely nothing.  SFR thus faces the same fate as the Second Purchaser in *Allison Steel* – it is not a bona fide purchaser because it did not rebut the presumption of notice arising from its inquiry duty.

*///*

42318197;1

**b.**    ***SFR is a sophisticated real estate investor with knowledge that it was purchasing an encumbered interest in the Property.***

The bona fide purchaser doctrine is "a shield to protect, and not a sword to attack." *Oliver v. Piatt*, 44 U.S. 333, 333 n.1 (1845).  Here, SFR knew that it purchased an interest in the Property encumbered by the Deed of Trust at the HOA's foreclosure sale.  **Exhibit K**, Deposition of SFR, at pp. 37:23-38:16.  Now, it attempts to use the bona fide purchaser doctrine not as a shield to protect its encumbered interest, but rather as a sword to elevate that encumbered interest into free and clear title to the Property.  SFR knew it was purchasing a junior interest in the Property, and knew that the mortgagees were paying off association super-priority liens, just like BANA did here.  SFR is not a bona fide purchaser.

Further, SFR was well aware of the pitfalls of purchasing properties at association foreclosure sales when it purchased its purported interest in the Property.  SFR's business purpose is to build a portfolio of properties that it can then rent to tenants.  *Id*. at p. 14, ll. 21-24. At the time of its Rule 30(b)(6) deposition, on July 11, 2016, SFR owned "about 650" properties within its portfolio. *Id*. at p. 15, ll. 7-10.  Of those 650 properties, all 650 have been purchased by SFR in the context of a HOA foreclosure sale.  *Id*. at p. 15, ll. 12-21.   SFR was given access to these foreclosure sales because it was provided a list of upcoming sales by Alessi prior such sales taking place.  *Id*. at p. 21, ll. 2-13. Given this type of intentional behavior, as well as the vast experience associated with 650 purchases, it is unsurprising that SFR is very familiar with the risks attendant to purchasing properties at association foreclosure sales.

SFR cannot qualify as a bona fide purchaser, as it had actual and constructive knowledge of the senior Deed of Trust, and inquiry notice of BANA's super-priority tender.  SFR thus cannot attempt to shield itself from the effect of BANA's super-priority tender, the HOA's decision to foreclose on only its sub-priority lien, or the invalidity of the sale based on its commercial unreasonableness.  Consequently, to the extent SFR has any interest in the Property that interest is subject to the Deed of Trust.  Accordingly, this Court should grant summary judgment in BANA's favor.

///

///

///

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

42318197;1

AKERMAN LLP

1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**E.    EQUITY CANNOT EXPAND SFR'S ENCUMBERED INTEREST INTO FREE AND CLEAR TITLE, AND EVEN IF EQUITABLE BALANCING IS REQUIRED, THAT BALANCING WEIGHS IN BANK OF AMERICA'S FAVOR.**

SFR will likely contend its purportedly free and clear title is unassailable because equity weighs in its favor.  However, equity cannot alter the legal effect of BANA's super-priority tender or the HOA's decision to foreclose on only the sub-priority portion of its lien.  And to the extent equitable balancing is required, that balancing clearly weighs in BANA's favor.

> **1.   *Equity cannot alter the legal effects of Bank of America's tender or the HOA's decision to foreclose on its sub-priority lien.***

While SFR's claims sound in equity, equity cannot overcome the satisfaction of the super-priority lien, or the fact that the HOA specifically chose to foreclose on its sub-priority lien.  Although parties' competing equities must be balanced in determining whether to set aside an association's foreclosure sale under *Shadow Wood*, Bank of America's arguments regarding tender and the HOA's intended sub-priority sale do not require that the sale be set aside, but rather require only that this Court give the sale the effect desired by the HOA and expected by SFR at the time of the sale – that SFR took title subject to the deed of trust.  *See Shadow Wood*, 366 P.3d at 1105.  The legal effect of Bank of America's tender was the extinguishment of the super-priority portion of the HOA's lien before the foreclosure sale.  *See Cladianos*, 69 Nev. at 45; *SFR Investments*, 334 P.3d at 413 ("As a practical matter, secured lenders will most likely pay the [9] months' assessments demanded by the association rather than having the association foreclose on the unit."); *Ikon Holdings*, 373 P.3d at 73 ("the superpriority lien granted by NRS 116.3116(2) … is limited to an amount equal to the common expense assessments due during the nine months before foreclosure.").  Because the super-priority lien was extinguished before the sale, the HOA could foreclose on only the sub-priority portion of its lien at the foreclosure sale.  Because the HOA foreclosed on the sub-priority portion of its lien, the interest it conveyed to SFR is subject to Bank of America's deed of trust.  The *Shadow Wood* Court did not expand a foreclosure-sale purchaser's rights beyond those limitations imposed by NRS 116 and long-standing Nevada jurisprudence.

NRS 116 expressly prohibits an association's trustee from delivering a deed with warranties, and provides that a foreclosure-sale purchaser acquires no greater title than that of the unit's owner.  *See* NRS 116.31164(3)(a).  This prohibition of warranty deeds tracks well-established Nevada

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  jurisprudence on the rights of foreclosure-sale purchasers.  Foreclosure sales are *caveat emptor*.  *See*

2  *Allison Steel*, 86 Nev. at 499 (in the absence of a statute,[7] a purchaser acquires no better title than the

3  debtor could have conveyed at the time the lien attached).  SFR could not acquire a greater interest

4  than the homeowner had at the foreclosure sale – title encumbered by the deed of trust – because no

5  super-priority lien was foreclosed in this case.  Neither equity nor the bona fide purchaser doctrine can

6  expand SFR's encumbered title into free and clear title.

7      *Shadow Wood* has no effect on this analysis because there was neither a pre-sale tender nor a

8  super-priority lien at the time of the association's foreclosure sale in that case.  In *Shadow Wood*, the

9  bank was the owner of the property at the time of the association's foreclosure sale, as it foreclosed

10  on its deed of trust and purchased the property itself at its own foreclosure sale before the association

11  foreclosed.  366 P.3d at 1107.  Because the bank was the homeowner, the HOA's **entire** lien was

12  superior to the bank's title as homeowner.  *Id.* Here, in contrast, the Deed of Trust encumbered the

13  Property at the time of the HOA's foreclosure sale, and Bank of America's tender extinguished the

14  super-priority lien prior to the HOA's foreclosure sale.  This ends the analysis – the deed of trust

15  survived the foreclosure sale.

16      *Shadow Wood* simply noted the steps a lender can take to protect itself if it does not satisfy the

17  super-priority lien before an association's foreclosure sale, as the bank failed to do in that case.  366

18  P.3d at 1107.  Failing to follow these steps can be weighed against a lender if it **does not** satisfy the

19  super-priority lien before the association's foreclosure and the association chooses to foreclose on that

20  super-priority lien.  But if the first deed of trust beneficiary **does** tender the super-priority amount

21  before the sale (as Bank of America did here), or the HOA chooses to foreclose on its sub-priority lien

22  (as the HOA did here), then equitable balancing is unnecessary because the association's sub-priority

23  sale cannot extinguish the deed of trust as a matter of law.  Here, equitable balancing could result in

24  the deed of trust being extinguished despite the fact that no lien senior to the Deed of Trust was

25  foreclosed.  Equity does not extend that far, and there would be nothing equitable about that result.

26

27  ---
[7]    NRS 116.3116 does not change the *caveat emptor* rule; it merely changes the order of lien priority.
28  Most importantly, it does not give the buyer any additional rights if the super-priority amount is tendered before the foreclosure sale, or if the HOA chooses to foreclose on its sub-priority lien.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

2.  ***If equitable balancing is necessary, that equitable balancing supports Bank of America's motion for summary judgment.***

To the extent the equities between SFR and Bank of America must be balanced, that balance weighs heavily in Bank of America's favor.  Here, Bank of America provided the Borrowers with a $368,000.00 loan, allowing the Borrower to purchase a house within the HOA.  **Exhibit A**.  When the Borrowers failed to pay their HOA assessments, Bank of America offered to pay the HOA a portion of those assessments on his behalf.  **Exhibit C**.  Bank of America then submitted payment for the undisputed super-priority amount of the HOA's lien.  **Exhibit C-3.**  Rather than accepting this payment, as required by its collection policy, the HOA chose to foreclose on the super-priority portion of its lien. **Exhibits D-1 and 4**.

In sum, Bank of America provided the Borrowers with the money needed to purchase the Property within the HOA and submitted payment for the exact amount of the lien that SFR contends was foreclosed before the foreclosure sale.  SFR, on the other hand, purchased the Property at a 94% discount knowing that it was purchasing an encumbered interest, and consistent with that belief, failed to undertake any effort whatsoever to determine if any entity satisfied the super-priority lien before the foreclosure sale.  And, SFR has received monthly rents of up to $1,450 since purchasing the Property in May 2013, *some 50 months*.  **Exhibit K** at p. 72:2-4; 78: 22-79:14. To the extent equitable balancing is necessary to resolve the quiet title and declaratory relief claims in this case, the undisputed facts show that equitable balance weighs in Bank of America's favor.  Bank of America is entitled to summary judgment.

///

///

///

///

///

///

///

///

25

42318197;1

## V. CONCLUSION

This Court should grant Bank of America's Motion for Summary Judgment because the HOA Statute is facially unconstitutional.  In the alternative, this Court should grant Bank of America's Motion for Summary Judgment because Bank of America's tendered the super-priority portion of the HOA lien, and SFR took the Property subject to the Deed of Trust because the tender extinguished the super-priority portion of the HOA lien.

DATED:  July 14, 2017.

AKERMAN LLP

/s/ Thera Cooper
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
*Attorneys for Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans, Inc.*

42318197;1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Akerman LLP, and that on the 14th day of July, 2017, I caused to be served a true and correct copy of the foregoing **BANK OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**, in the following manner:

(**ELECTRONIC SERVICE**)  Pursuant to FRCP 5(b), the above referenced document was electronically filed on the date hereof with the Clerk of the Court for the United States District Court by using the Court's CM/ECF system and served through the Court's Notice of electronic filing system automatically generated to those parties registered on the Court's Master E-Service List as follows:

| | |
|---|---|
| **Virginia Cronan Lowe** <br> Trial Attorney, Tax Division <br> U.S. DEPARTMENT OF JUSTICE <br> P.O. Box 683 <br> Ben Franklin Station <br> Washington, DC 20044 <br> virginiacronan.lowe@usdoj.gov <br><br> *Attorneys for United States Department of Treasury, Internal Revenue Service* | **Howard C. Kim, Esq.** <br> **Diana Cline Ebron, Esq.** <br> **Jacqueline A. Gilbert, Esq.** <br> **Karen L. Hanks, Esq.** <br> KIM GILBERT EBRON <br> 7625 Dean Martin Drive, Suite 110 <br> Las Vegas, NV 89139 <br> diana@kgelegal.com <br> howard@kgelegal.com <br> jackie@kgelegal.com <br><br> *Attorneys for SFR Investments Pool I, LLC* |
| **Thomas E. McGrath, Esq.** <br> Tyson & Mendes, LLP <br> 8275 South Eastern Avenue, Suite 115 <br> Las Vegas, Nevada 89123 <br> tmcgrath@tysonmendes.com <br><br> *Attorneys for Double Diamond Ranch Master Association* | **Holly A. Vance** <br> U.S. ATTORNEY'S OFFICE <br> 100 West Liberty <br> Reno, NV 89501 <br> Holly.A.Vance@usdoj.gov <br><br> *Attorneys for United States Department of Treasury, Internal Revenue Service* |
| **Bradley D Bace, Esq.** <br> **Huong X. Lam, Esq.** <br> ALESSI & KOENIG, LLC <br> 9500 W. Flamingo Rd., Ste. 205 <br> Las Vegas, NV 89147 <br> brad@alessikoenig.com <br> huong@alessikoenig.com <br> steve@nrs.116.com <br><br> *Attorneys for Alessi & Koenig, LLC* | Jeanette E. McPherson, Esq. <br> SCHWARTZER & MCPHERSON LAW FIRM <br> 2850 S. Jones Blvd., Suite 1 <br> Las Vegas, Nevada 89109 <br> bkfilings@s-mlaw.com <br><br> *Attorneys for Shelley D. Krohn, Chapter 7 Trustee* |

/s/ Carla Llarena
An employee of Akerman LLP

42318197;1