DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
**AKERMAN LLP**
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: darren.brenner@akerman.com
Email: thera.cooper@akerman.com

*Attorneys for Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ALESSI & KOENIG LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD SILVERSTEIN, an individual; SANDRA SILVERSTEIN, an individual; COUNTRYWIDE HOME LOANS, INC., a foreign corporation; THE CITY OF RENO, a domestic government entity; WASTE MANAGEMENT OF NEVADA, INC., a domestic corporation; DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, a domestic corporation, DOES INDIVIDUALS I-X, inclusive, and ROE CORPORATIONS XI-XXX, inclusive<br><br>Defendants. | Case No.: 3:15-cv-00520-RCJ-WGC<br><br>**BANK OF AMERICA'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| BANK OF AMERICA, N.A.,<br><br>Counter/Cross Claimant,<br><br>v.<br><br>ALESSI & KOENIG LLC, a Nevada limited liability company; SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company; DOUBLE DIAMOND RANCH MASTER ASSOCIATION, a Nevada entity; Does 1 through 10; and ROES 1 through 10, inclusive, | |

42655333;1

| | |
|---|---|
| 1 | SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company, |
| 2 | Counterclaimant/Cross-claimant, |
| 3 | v. |
| 4 | BANK OF AMERICA, N.A.; UNITED STATES OF AMERICA; NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; and RICHARD SILVERSTEIN, an individual; SANDRA SILVERSTEIN, an individual; DOES 1 through 10, and ROE BUSINESS ENTITIES 1 through 10, inclusive, |
| 8 | Counter/Cross-Claimant, Cross-Defendants. |

Counter/Cross-Claimant and Cross-Defendant Bank of America, N.A. (**Bank of America**) hereby replies to SFR Investment Pool 1, LLC's (**SFR**) opposition to its motion for summary judgment in this matter, and further states as follows.

## **I. INTRODUCTION**

Bank of America initially sought summary judgment on all claims in this matter. [Dkt. No. 79]. Following SFR's opposition to its motion, Bank of America has determined that it will withdraw its request for summary judgment on its affirmative Crossclaim against SFR. However, Bank of America submits this reply brief in support of its request for summary judgment on SFR's Counterclaim and Crossclaim against it in this matter. Judgment as a matter of law is appropriate on such claims.

The Ninth Circuit has held that NRS 116, *et seq.* (the **HOA Lien Statute**) is facially unconstitutional because it did not require associations to give mortgagees prior notice of the association's sale. *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016). While SFR contends that the Ninth Circuit majority was incorrect in *Bourne Valley*, it is the Ninth Circuit, not SFR's opinion, which binds this Court. Under binding Ninth Circuit precedent, Bank of America is entitled to summary judgment.

Even if the HOA Lien Statute were constitutional, Bank of America would still be entitled to summary judgment because it tendered the undisputed super-priority amount before the HOA's sale, an action the Nevada Court of Appeals just held protects a deed of trust from extinguishment so long

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

as the tendered amount was greater than or equal to the super-priority amount in *Bank of America, N.A. v. SFR Investments Pool 1, LLC*. While the HOA could not "waive" its super-priority lien rights under NRS 116, it could still choose to foreclose on only the sub-priority portion of its lien. That is the decision it made here. That sub-priority foreclosure had no effect on Bank of America's Deed of Trust.

Additionally, SFR cannot hide behind the bona fide purchaser doctrine, as it had inquiry notice of Bank of America's tender. SFR's argument that the sales price for this property was reasonable is similarly flawed. Finally, SFR's argument that all of these points are irrelevant because the Foreclosure Deed contains a few recitals regarding the statutory notices has been expressly rejected by the Nevada Supreme Court. This Court should grant Bank of America's motion for summary judgment as to SFR's Counterclaim and Crossclaim against Bank of America.

## IV. LEGAL DISCUSSION

### A. BANK OF AMERICA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE STATE FORECLOSURE STATUTE IS FACIALLY UNCONSTITUTIONAL.

#### 1. *SFR Investments did not address whether the HOA Lien Statute required actual notice.*

Whether the HOA Lien Statute required that associations provide actual notice to lenders of their foreclosure sales was not at issue and was not discussed in *SFR Investments*. In fact, the Nevada Supreme Court explained in *Saticoy Bay* that it did not address the Due Process Clause in *SFR Investments*. *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage*, 388 P.3d 970, 974 (Nev. 2017) ("Therefore, we hold that Nevada's superpriority lien statutes do not implicate due process. To the extent this court's decision in *SFR Investments* … suggests otherwise, we clarify that due process is not implicated in an HOA's nonjudicial foreclosure."). The very case on which SFR depends, Saticoy Bay, reveals the falsity of their argument that *SFR Investments* decided the HOA Lien Statute was constitutional. And because *Saticoy Bay* is based on an erroneous interpretation of the federal constitution, rather than state law, it offers no basis for this Court to ignore the binding effect of the *Bourne Valley* holding.

…

…

3

42655333;1

### 2. *Binding Ninth Circuit precedent holds that HOA Lien Statute foreclosures constitute state action.*

Here, the controlling precedent on federal constitutional questions is the Ninth Circuit's decision in *Bourne Valley*. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). It is axiomatic that the "decision of [a state's highest court] construing the Constitution of the United States . . . is not binding upon the federal courts." *Watson v. Estelle*, 886 F.2d 1093, 1095 (9th Cir. 1989); S*w. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 152 (5th Cir. 1980) (Fifth Circuit was not bound by the Texas Supreme Court's federal due process analysis); *Doelamo v. Karl-Heinz*, 2014 WL 2197640, at *3 (D. Nev. May 27, 2014) (rejecting the argument that the district court was bound to follow a state's highest court's interpretation that a state law did not violate the due process clause of the Fourteenth Amendment).

The Ninth Circuit held that HOA Lien Statute foreclosures satisfied the state action requirement because "[a]bsent operation of the [HOA Lien Statute]," which was enacted by the Nevada Legislature, "Wells Fargo would have had a fully secured interest in the Property," and "[a] foreclosure by a homeowners' association would not have extinguished Wells Fargo's interest." *Bourne Valley*, 832 F.3d at 1160. Given that what constitutes state action under the federal constitution is a matter of federal law, this Court is bound by *Bourne Valley*'s holding that HOA Lien Statute foreclosures constitute state action, and thus must comply with the Due Process Clause's actual-notice requirement. *See Watson*, 886 F.2d at 1095; *see also see also Bank of America, N.A. v. BTK Properties LLC*, No. 2:16-cv-01558-JCM-PAL, 2017 WL 774913, at *2 (D. Nev. Feb. 28, 2017) ("[NRS 116] is inconsistent with the due process clause of the federal Constitution. Thus, *Bourne Valley* is binding on this court."); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1012 (9th Cir. 2004) ("It is well established that a state court's interpretation of its statutes is binding on the federal courts unless a state law is inconsistent with the federal Constitution.").

### 3. *Bank of America Has Standing to Address the HOA Lien Statute*

SFR spends an inordinate amount of effort in its brief challenging Bank of America's ability to mount a challenge to the HOA Lien Statute. SFR's analysis, however, misses the mark—as the issue is not whether notice was given, but rather, merely whether Bank of America's rights were purportedly extinguished under the unconstitutional statute.

4

42655333;1

SFR's most poignant mistake is its failure to acknowledge the impact of the facial challenge brought by Wells Fargo in *Bourne Valley*. SFR misconstrues Bank of America's argument, as the Bank does not seek to invoke standing under the doctrine of *jus tertii* standing. [Dkt. 85 at 11]. Bank of America, instead, explained that in *Bourne Valley*, Wells Fargo invoked "'a species of third party (*jus tertii*) standing' by which a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question.'" *Thibodeau v. Portuondo*, 486 F.3d 61, 71 (2d Cir. 2007) (citation omitted). Bank of America's conclusion, therefore, is that when it prevailed in *Bourne Valley*, Wells Fargo prevailed not only on behalf of itself but also all others impacted by the HOA Lien Statute.

Thus, to succeed in this lawsuit, Bank of America does not need to re-establish that the HOA Lien Statute violates due process; instead, it must only show that its property rights were extinguished pursuant to the HOA Lien Statute—a statute that has already been declared unenforceable and unconstitutional on its face. Indeed, the Ninth Circuit's ruling that the HOA Lien Statute is facially unconstitutional would be rendered meaningless if each mortgagee, such as Bank of America, was forced to litigate anew the due process question even after *Bourne Valley*, and lower courts were free to deviate from the Ninth Circuit's determination that the law was unconstitutional on its face.

SFR, however, argues that the facially unconstitutional HOA Lien Statute is "cured" if Bank of America had actual notice of the sale, as there was no injury in fact. [Dkt. 85 at 12]. This argument fails to acknowledge, however, that Bank of America's property rights were purportedly extinguished by virtue of the facially unconstitutional statute. Regardless of whether Bank of America actually received notice, the effect of *Bourne Valley* is to render all foreclosures under the unconstitutional statute inappropriate.

SFR's argument regarding *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 789 (9th Cir. 2014) also fails. The Ninth Circuit held in that case that an actor can cure a statute that has been declared facially unconstitutional by voluntarily providing more process than the statute requires. *Id*. at 789. Indeed, the Ninth Circuit explained further that where the unconstitutional statute failed to provide for an individualized determination before setting bail, even persons given an individualized determination "could successfully challenge" the law. *Id*. at 789. The Ninth Circuit's logic similarly applies in full

5

force here.  Whether or not SFR chose to give actual notice to Bank of America, the statute's mechanisms remain facially unconstitutional, just like for persons given an individualized bail determination in *Lopez-Valenzuela*. *Id*. at 789.

As such, actual notice does not alter the unavoidable conclusion that the HOA's sale was conducted pursuant to a *facially* unconstitutional statute, and thus could not have extinguished the deed of trust.  Bank of America did indeed suffer an injury in fact, as its property interests were purportedly extinguished by an unconstitutional statute.

### 4. *Binding Ninth Circuit precedent holds that the HOA Lien Statute does not require actual notice to lenders.*

This Court is also bound by the Ninth Circuit's holding that the HOA Lien Statute does not require actual notice to lenders because the Nevada Supreme Court has not addressed this issue. Federal trial courts are bound by the governing court of appeals' interpretation of state law "in the absence of any subsequent indication from the [state] courts that [the Court of Appeals'] interpretation was incorrect."  *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Broussard v. Southern Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir.1982); *Newell v. Harold Shaffer Leasing Co.*, 489 F.2d 103, 107 (5th Cir.1974) ("*Stare decisis* requires that we follow our earlier determination as to the law of a state in the absence of any subsequent change in the state law.").

Here, the Nevada Supreme Court has not addressed whether the HOA Lien Statute requires that associations provide lenders with actual notice of their foreclosure sales.  That issue was not before the Supreme Court in *SFR Investments*, and the Court expressly declined to reach the issue in *Saticoy Bay*, instead disagreeing with the Ninth Circuit's interpretation of the federal state-action requirement to uphold the HOA Lien Statute.  *See SFR Investments*, 334 P.3d at 418; *Saticoy Bay*, 388 P.3d at 974 (explaining that because it determined due process was not implicated, "we need not determine whether NRS 116.3116 *et seq.* incorporates the notice requirements set forth in NRS 107.090," which require actual notice).  Because the Nevada Supreme Court has not indicated the Ninth Circuit's analysis of the HOA Lien Statute's notice provisions was incorrect, this Court is bound by *Bourne Valley*'s interpretation of those notice provisions as not requiring that associations provide lenders with the requisite actual notice of their foreclosure sales.

In sum, under binding Ninth Circuit precedent, HOA Lien Statute foreclosures constitute state action, implicating the Due Process Clause. Under that same binding authority, the HOA Lien Statute does not require that associations provide lenders with actual notice of their foreclosure sales, meaning the statute is facially unconstitutional under the Due Process Clause. The HOA's foreclosure under that facially unconstitutional statute here could not extinguish the First Deed of Trust and Second Deed of Trust. Accordingly, Defendants are entitled to summary judgment.

**5.   *This Court Should Decline to Entertain SFR's Return Doctrine and Severability Arguments.***

In its Opposition to SFR's Motion for Summary Judgment, Bank of America explained the flaws inherent in SFR's Return Doctrine and Severability arguments. [Dkt. 84 at 10-18]. Bank of America hereby incorporates such discussion as if fully set forth herein, and requests that the Court find that SFR's argument on these matters is not dispositive.

**B.   BANK OF AMERICA IS ALSO ENTITLED TO SUMMARY JUDGMENT BECAUSE IT TENDERED THE SUPER-PRIORITY AMOUNT OF THE HOA LIEN PRIOR TO THE HOA SALE.**

If this Court does not hold that Bank of America is entitled to summary judgment based on the HOA Lien Statute's facial unconstitutionality, Bank of America is entitled to summary judgment because its super-priority tender extinguished the HOA's super-priority lien before the foreclosure sale. SFR's arguments to the contrary, that the payment was conditional, not kept good, and rejected in good faith, all fail. So too does SFR's misguided argument that Alessi & Koenig never received the tender check, as this postulation—even if true (it is not)—would not defeat tender. Quite simply, Bank of America tendered the undisputed super-priority amount of the HOA's lien to Alessi before the foreclosure sale. Alessi's rejection of the tender, despite an obligation to accept the payment, does not negate the effect of Bank of America's tender. Further, the letters accompanying the tender made clear the tender was unconditional, and thus effective to extinguish the HOA's super-priority lien.

***1.   Bank of America tendered the exact super-priority amount to Alessi.***

The Nevada Supreme Court has confirmed that an association's super-priority lien is limited to nine months of delinquent assessments. *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 132 Nev. Adv. Op. 35, 373 P.3d 66, 73 (2016). To satisfy the super-priority portion

7

42655333;1

of the HOA's lien, Bank of America, through Miles Bauer, sent a letter to Alessi, seeking to determine the super-priority lien amount and offering to pay the same. (**Exhibit C to Bank of America's Motion**). Alessi refused to provide a super-priority payoff quote, instead providing the Borrower's HOA Statement of Account and demanding that Bank of America pay off the HOA's entire lien, including the portion that was subordinate to the First Deed of Trust. (**Exhibit D to Bank of America's Motion**). The Statement of Account, however, showed the HOA's monthly assessments were $30.00 each, meaning the statutory super-priority amount of the HOA's lien was $270.00, or $30.00 multiplied by 9. *Id.*; *see Ikon Holdings*, 373 P.3d at 73. Accordingly, Bank of America, sent Alessi a check for $270.00 on August 20, 2010. (**Exhibit E-1 and E-2 to Bank of America's Motion**).

SFR's opposition to Bank of America's Motion for Summary Judgment does not argue that Bank of America failed to tender the appropriate super-priority amount to Alessi & Koenig. [Dkt. 85]. As a result, this Court can conclusively determine that Bank of America did, in fact, tender the appropriate super-priority amount to Alessi & Koenig.

### 2. *Bank of America's tender was not conditional.*

The tender doctrine is designed "**to enable the debtor to** … relieve his property of encumbrance by **offering his creditor** all that he has any right to claim," which "does not mean that the debtor must offer an amount beyond reasonable dispute, but it means **the amount due, — actually due**." *Dohrman v. Tomlinson*, 399 P.2d 255, 258 (Id. 1965) (emphasis added). Tender is complete when "the money is offered to a creditor who is entitled to receive it." *Cladianos v. Friedhoff*, 69 Nev. 41, 45, 240 P.2d 208, 210 (1952); *see also Ebert v. W. States Refining Co.*, 75 Nev. 217, 222, 337 P.2d 1075, 1077 (1959) (enforcing option contract where corporation offered to pay full amount to exercise option). After the money owed is offered to the creditor, "nothing further remains to be done, and the transaction is completed and ended." *Cladianos*, 69 Nev. at 45.

SFR argues here, however, that tender was conditional and therefore not valid. [Dkt. 85 at 17]. Yet, a tender is not rendered ineffective by the tendering party's demand for matters to which it is entitled. "[The definition of tender] is more precisely stated as an offer of payment that is coupled either with no conditions or only **with conditions upon which the tendering party has a right to**

**insist**." *Fresk v. Kraemer*, 337 Or. 513, 522, 99 P.3d 282, 287 (2004) (emphasis added). Thus, "[a] tender of payment may be conditional as long as the attached condition is one on which the tenderer has the right to insist." *Millhollin v. Conveyor Co.*, 287 Mont. 377, 383, 954 P.2d 1163, 1166 (1998); *Dull v. Dull*, 138 Ariz. 357, 359, 674 P.2d 911, 913 (Ariz. Ct. App. 1983). For example, conditioning tender on release from further liability on the recipient's claim does not prevent an effective tender. *See Fresk*, 99 P.3d at 287 (finding that under a statute precluding an attorney's fee award to a party to whom full damages were tendered prior to litigation, tender was not invalidated by conditioning payment upon a release of liability).

The Nevada Court of Appeals' decision that Bank of America's super-priority tender checks—accompanied by the very same Miles Bauer letter that Bank of America's super-priority tender here – did not contain any impermissible conditions is significant. *Bank of America, N.A. v. SFR Investments Pool 1, LLC*, Case No. 70501, at 4 (Nev. Ct. App. May 31, 2017). As Bank of America argued in its opening brief, the Court of Appeals "conclude[d] that, to the extent [Bank of America's] tender was conditional, Bank of America had a right to insist on the given condition," meaning "the district court's finding that Bank of America's tender was insufficient solely because it was conditional is incorrect." *Id.*, at 3-4. SFR claims, however, that this case is not binding upon this Court, and that it is subject to a petition for an *en banc* review. At the very least, this case is persuasive authority for this Court to consider.

More poignantly, SFR entirely failed to rebut Bank of America's argument that federal courts in Nevada have also held that Bank of America's super-priority tender checks—similarly accompanied by the very same Miles Bauer letters that accompanied Bank of America's super-priority tender here—were unconditional tenders. *U.S. Bank, N.A. v. SFR Investments Pool 1, LLC*, 2016 WL 4473427 at *6 (D. Nev. Aug. 24, 2016) (rejecting the foreclosure-sale purchaser's argument that Bank of America's super-priority tender was conditional, explaining that "a reasonable jury could not interpret the evidence that way."); *U.S. Bank, N.A. v. Bacara Ridge Assoc.*, 2016 WL 5334655 at *3 (D. Nev. Sep. 22, 2016) (same); *U.S. Bank, N.A. v. Emerald Ridge Landscape Maintenance Ass'n*, 2:15-cv-00117-MMD-PAL (D. Nev. Sep. 30, 2016). In *Emerald Ridge*, the court explained that the

9

42655333;1

Miles Bauer tender letters were not conditional because accepting the tender did not require the association or its collection agent to "take any actions or waive any rights," explaining:

> The language Miles Bauer included with their cashier's check states that Miles Bauer, and presumably their client, will understand endorsement of the check to mean they have fulfilled their obligations. It simply delineates how the tenderer will interpret the action of the recipient (which also turned out to be the correct interpretation of the law). It does not require [the association's trustee] to take any actions or waive any rights. And it does not depend on an uncertain event or contingency.

*Emerald Ridge*, 2:15-cv-00117-MMD-PAL, at 7.[1] Because Bank of America's super-priority tender was unconditional, the *Emerald Ridge* Court held the tender "was proper," meaning the tender extinguished the super-priority portion of the association's lien. *Id.*

The tender facts in this case are identical to the tender facts in *U.S. Bank*, *Bacara Ridge*, and *Emerald Ridge*, where courts held that Bank of America's super-priority tenders were unconditional tenders that extinguished the associations' super-priority liens even though the tenders were unjustifiably rejected. Examining the language of these Miles Bauer letters proves the *U.S. Bank*, *Bacara Ridge*, and *Emerald Ridge* Courts were correct.

It follows that the language contained in the Miles Bauer tender letters do not affect the validity of tender because the letters do not impose "an unwarranted condition." (Exhibit C, Exhibit E-1 and E-2). In fact, they do not impose any condition. The letters simply state that Bank of America will interpret the acceptance of its tender to represent the HOA's acceptance Bank of America has fulfilled its super-priority obligations as holder of the first deed of trust. The tender did not require the HOA or Alessi to take any action or waive any rights, and it did not depend on an uncertain event or contingency. Therefore, SFR's argument fails.

### 3. Bank of America's tender was kept good.

After failing in its attempt to show conditions upon tender, SFR also argues that Bank of America's tender was insufficient in this case because it was not "kept good." [Dkt. 85 at 19]. To support this argument, SFR cites § 6.4 of the Restatement (Third) of Property, which requires that an

---

[1] A copy of this Summary Judgment Order is attached as **Exhibit L** to Bank of America's opening brief.

unconditional tender be kept good in order to be effective in light of rejection. SFR, however, neglects to cite the more expansive body of Nevada case law on this issue.

Tender is complete when "the money is offered to a creditor who is entitled to receive it." *Cladianos v. Friedhoff*, 69 Nev. 41, 45, 240 P.2d 208, 210 (Nev. 1952) (emphasis added). After the money owed is offered to the creditor, "nothing further remains to be done, and the transaction is completed and ended." *Id*. A junior lienholder may clear a senior lien, restoring the property's title free and clear of the encumbrance, if it satisfies the senior obligation prior to foreclosure. *McCall v. Carlson*, 63 Nev. 390, 411-12, 172 P.2d 171, 181-82 (Nev. 1946). A refusal to accept tender results in a discharge of the lien even though a payment is not delivered, or if it is rejected. As the Tenth Circuit explained in *Guthrie v. Curnutt*, 417 F.2d 764, 765-66 (10th Cir. 1969), "[t]he failure of the agent to count out the cash or to present a cashier's check in the actual amount does not destroy the tender. We have held that when a party, able and willing to do so, offers to pay another a sum of money and is told that it will not be accepted, the offer is a tender without the money being produced." *Id*. This concept was codified in the Uniform Commercial Code, which provides a useful illustration in a non-real estate context:

> If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is a discharge, to the extent of the amount of the tender, of the obligation of an endorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

NRS 104.3603.

Article 3 of the Uniform Commercial Code further confirms that in *both* the common law and statutory contexts, tender discharges the lien for which payment is tendered regardless of whether the lien holder rejects tender. *See also* 15 Williston, A Treatise on the Law of Contracts, § 1819 (3d ed. 1972) (tender is excused where the obligee tells the obligor that tender, if made, will not be accepted, or that a tender would be futile).

Despite this body of law that holds tender to be complete once the offer to pay is made, SFR's argument is essentially that tender was no longer "kept good" after the initial offer by counsel. This position is wrong, as the letter sent from Miles Bauer to the HOA stated that Bank of America offers to pay the super-priority sum (and did pay such sum) to the HOA. **(Exhibit C to BANA's Motion**

11

**for Summary Judgment**). There no evidence in this case that BANA withdrew this offer at any time. Accordingly, SFRs provide exactly zero evidence that this offer was no longer "kept good" after it was made. Certainly, the closure of an internal file—as postulated by SFR—is not the same as withdrawing an offer. Without competent evidence to support this naked assertion, SFR cannot allege that tender failed to remain available. *Wood*, 121 P.3d 1026, 1031-32 (Nev. 2005). As a result, SFR's argument fails.

### 4. *Tender Was Not Rejected in Good Faith.*

SFR's next attack on tender consists of an improper attempt to invite rank speculation into this Court's decision. In its opposition, SFR devotes an entire section to theorize that the honest belief that tender was insufficient qualifies as an exception to the rule. [Dkt. 85 at 19-20]. SFR's assertion is that, *inter alia*, *Bank of America, N.A. v. Rugged Oaks Investments, LLC*, Nevada Supreme Court Case No. 68504 (Sept. 16, 2016) (unpublished order), applies to discharge a lien if there was good faith rejection of a tender. [Dkt. 85 at p. 20].

Yet, there is absolutely no evidence in the record that the HOA, its agent, or another party rejected tender in good faith. SFR has provided not one iota of evidence to support this defense. It has attached no deposition transcript, affidavit, or discovery response to prove such an assertion. Instead, it speculates that the HOA may have believed it was correct when it rejected tender. [Dkt. 85 at 20]. This baseless invitation to invite rank speculation as to the HOA's "good faith" is supported by no evidence. There is no genuine issue of material fact because no fact exists to prove this new assertion.

Summary judgment practice and procedure has long required the opponent of a motion to not merely rest upon general allegations and conclusions and to, instead, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine factual issue. *See, e.g., In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 536 (9th Cir. 1990). This axiom of civil procedure prevents parties from introducing rank speculation as a basis to defeat summary judgment. By offering exactly zero evidence to support a "good faith rejection" defense, SFR has affirmatively proven that this Court need not consider *Rugged Oaks*, as the facts of this case do not permit any

42655333;1

analysis of the HOA's good faith. As a result, without the need to consider the merits of *Rugged Oaks*, the only relevant authority on the effect of tender is *Stone Hollow*. SFR's argument thus fails.

### 5. *While Bank of America Did Deliver a Check to Alessi, Any Factual Dispute Does Not Render Summary Judgment Inappropriate.*

SFR presents one additional argument against tender—that it claims Alessi & Koenig did not receive a tender payment from Bank of America. [Dkt 85 at 17]. Interestingly, SFR makes no argument that Alessi failed to receive the first correspondence from Bank of America, in which the Bank offered to pay a tender amount. *Id*. Nor could it, as there is no dispute that Alessi responded to this letter with a payoff quote. *Id*. Instead, SFR contends merely that any failure to present a check would preclude summary judgment. *Id*. Such is not the case, as SFR's factual distinction (while untrue) makes no difference in the outcome. The tender doctrine simply does not require delivery of a check—although Bank of America did so deliver here. Any factual dispute, therefore, is immaterial to deciding this summary judgment motion.

Even if Alessi never received a check from Bank of America, tender is complete when "the **money is offered** to a creditor who is entitled to receive it." *Cladianos v. Friedhoff*, 69 Nev. 41, 45, 240 P.2d 208, 210 (1952) (emphasis added); *see also Ebert v. W. States Refining Co.*, 75 Nev. 217, 222, 337 P.2d 1075, 1077 (1959). After the offer is made to the creditor, "nothing further remains to be done, and the transaction is completed and ended." *Id.* Other jurisdictions agree that tender is defined as "**an offer of payment** that is coupled either with no conditions or only with conditions upon which the tendering party has a right to insist." *Fresk v. Kramer*, 99 P.3d 282, 286-87 (Or. 2004) (emphasis added); *see also* 74 Am. Jur. 2d *Tender* § 22 (2014). The tender doctrine is designed "**to enable the debtor to** … relieve his property of encumbrance by **offering his creditor** all that he has any right to claim," which "does not mean that the debtor must offer an amount beyond reasonable dispute, but it means **the amount due, — actually due**." *Dohrman v. Tomlinson*, 399 P.2d 255, 258 (*Id*. 1965) (emphasis added).

Attempting to avoid this clear law, SFR essentially espouses a counterintuitive definition of the word "offer," arguing that in essence that an "offer" of money is actually the payment of money. SFR's distinction here is irrelevant—Nevada law is clear that an offer of payment is synonymous with

13

42655333;1

an actual payment under the tender doctrine. *See Ebert*, 75 Nev. at 222. In *Ebert*, the appellant and respondent entered into a lease agreement with an option for respondent to purchase the leased property at the end of the lease term. *Id.*, at 220. When the respondent provided the required 60-day notice that it was exercising its option to purchase the property, the final two monthly payments under the lease remained unpaid. *Id.*, at 221. Appellants argued that "the failure to pay the last two months' rent precluded the corporation from exercising the option." *Id.* The Nevada Supreme Court disagreed, holding that respondent's failure to actually submit payment for the final two months' rent did not prevent it from exercising the option when it was "at all times ready, willing, and able to pay the $800 rent remaining due." *Id.*, at 222.

As in *Ebert*, there is no factual dispute that Bank of America at least offered to tender payment to Alessi. While Bank of America did tender a check to Alessi, whether it did or not is not dispositive. SFR's red herring argument, therefore, should be discarded.

## C. IF THE HOA DID ATTEMPT TO FORECLOSE ON ITS SUPER-PRIORITY LIEN, THE SALE IS INVALID BECAUSE IT WAS COMMERCIALLY UNREASONABLE.

If the HOA did in fact intend to foreclose on the super-priority portion of its lien despite all the evidence to the contrary, then the sale of the Property for $15,000.00 was commercially unreasonable. The Nevada Supreme Court has held that an association's foreclosure sale must be set aside if the sale fetched an inadequate price and there is evidence of "fraud, unfairness, or oppression." *Shadow Wood*, 366 P.3d at 1114. Here, the HOA sold the Property for 6**%** of its fair market value at the foreclosure sale, just more than ¼ of the 20% of fair market value the *Shadow Wood* Court explained would be "grossly inadequate as a matter of law." (Exhibit J and Exhibit K). Bank of America produced expert testimony showing the Property's fair market value at the time of the foreclosure sale was $245,000.00. (Exhibit K). The HOA foreclosure-sale price was $15,000.00. (Exhibit J). Dividing the sales price by the fair market value at the time of the sale shows the Property was sold for 6% of its fair market value. The foreclosure-sale price is thus grossly inadequate as a matter of law.

In response, SFR predictably argued that price alone is not sufficient to set aside a foreclosure sale. [Dkt. 85 at 20-22]. It argued that an inadequate price must be coupled with fraud, oppression or unfairness as accounts for and brings about the inadequacy of the price. *Id*. Yet, Bank of America

14

did offer evidence that the inadequate sales price was caused by the fraud, oppression, or unfairness caused by SFR. As discussed above, Bank of America tendered payment for the undisputed super-priority amount of the HOA's lien to Alessi before the foreclosure sale, which the Alessi rejected. To the extent the HOA purported to foreclose on the super-priority lien after Alessi rejected Bank of America's pre-foreclosure payment for the exact amount of that lien, the sale was unfair, and due to be set aside as commercially unreasonable. Additionally, the HOA and Alessi's choice to foreclose on the sub-priority lien directly brought about the grossly inadequate price. As discussed above, the evidence in this case clearly indicates that the HOA and Alessi intended to foreclose on the sub-priority portion of the HOA's lien. The sale of an interest in the Property encumbered by the Deed of Trust is worth far less than title to the Property free and clear. Consequently, if construed as a super-priority sale, the sale was commercially unreasonable because conducting the sale as a sub-priority foreclosure resulted in a $15,000.00 sale price, which was grossly inadequate for an unencumbered interest in the Property worth $245,000.00 at the time of the sale. (Exhibit J and Exhibit K).

The record evidence shows the HOA did not foreclose on its super-priority lien, which means SFR's interest in the Property is subject to Bank of America's Deed of Trust. To the extent the HOA actually purported to foreclose on its super-priority lien, the sale is void as commercially unreasonable based on the grossly inadequate sales price coupled with the unfairness of (1) foreclosing on a super-priority lien after rejecting Bank of America's payment of the exact super-priority amount, and (2) giving super-priority effect to a sale that was conducted as a sub-priority foreclosure. These two instances caused an artificially low sales price. Thus, under either scenario, Bank of America's Deed of Trust survived the HOA's foreclosure sale.

**D. SFR'S IS NOT A BONA FIDE PURCHASER**

SFR contends it is a bona fide purchaser because (1) it had no knowledge of a pre-sale dispute and (2) Bank of America produced no evidence that SFR was on notice of the alleged tender letters, either actually or constructively. [Dkt. No. 85, at 24-25]. SFR's first point is belied by its frequent role in purchasing similar HOA foreclosure properties, and its second point is belied by evidence that SFR had inquiry notice of Bank of America's super-priority tender. As a result, SFR is not entitled to any benefits conferred upon bona fide purchasers in Nevada.

### 1. *SFR is a Sophisticated Real Estate Investment Entity*

The bona fide purchaser doctrine is "a shield to protect, and not a sword to attack." *Oliver v. Piatt*, 44 U.S. 333, 333 n.1 (1845). Here, SFR knew that it purchased an interest in the Property encumbered by the Deed of Trust at the HOA's foreclosure sale. (Exhibit L to Bank of America's Motion, Deposition of SFR, at pp. 37:23-38:16). Now, it attempts to use the bona fide purchaser doctrine not as a shield to protect its encumbered interest, but rather as a sword to elevate that encumbered interest into free and clear title to the Property. SFR knew it was purchasing a junior interest in the Property, and knew that the mortgagees were paying off association super-priority liens, just like BANA did here. SFR is not a bona fide purchaser.

Further, SFR was well aware of the pitfalls of purchasing properties at association foreclosure sales when it purchased its purported interest in the Property. SFR's business purpose is to build a portfolio of properties that it can then rent to tenants. *Id*. at p. 14, ll. 21-24. At the time of its Rule 30(b)(6) deposition, on July 11, 2016, SFR owned "about 650" properties within its portfolio. *Id*. at p. 15, ll. 7-10. Of those 650 properties, all 650 have been purchased by SFR in the context of a HOA foreclosure sale. *Id*. at p. 15, ll. 12-21. SFR was given access to these foreclosure sales because it was provided a list of upcoming sales by Alessi prior such sales taking place. *Id*. at p. 21, ll. 2-13. Given this type of intentional behavior, as well as the vast experience associated with 650 purchases, it is unsurprising that SFR is very familiar with the risks attendant to purchasing properties at association foreclosure sales.

While SFR argues that its status as a frequent real estate purchaser does not *per se* disqualify it from being a bona fide purchaser here [Dkt. 85 at 25], it has produced no evidence that it is actually a bona fide purchaser in this instance. This is because SFR cannot reasonably argue that it lacked knowledge of the status of HOA foreclosures in Nevada when it purchased the subject property for pennies on the dollar. SFR has failed to prove that it was, in fact, a bona fide purchaser and, therefore, does not qualify as such.

…

…

…

16

### 2. *SFR failed to discharge its duty of inquiry.*

Nevada law is clear – "[w]hen **anything** appears in" an instrument of record "sufficient to put a prudent man on inquiry which if prosecuted with ordinary diligence would lead to actual knowledge of **some right or title in conflict with the title he is about to purchase**, it is his duty to make inquiry, and **if he does not do so he is chargeable with actual knowledge of what the inquiry would have disclosed**." *Allison Steel Mfg. Co. v. Bentonite, Inc.*, 86 Nev. 494, 498, 471 P.2d 666, 668 (1970) (emphasis added). Here, the recorded First Deed of Trust contains a Planned Unit Development Rider with the following provision, which put all parties on inquiry notice of Bank of America's super-priority tender: "If Borrower does not pay [HOA] dues and assessments when due, **then Lender may pay them**." (Exh. A to Bank of America's Motion, p. 26). A purchaser "put upon inquiry may rebut the presumption of notice by showing that he made due investigation without discovering the prior right or title he was bound to investigate." *Berge v. Fredericks*, 95 Nev. 183, 190, 591 P.2d 246, 249 (1979).

SFR – required to show that it made "a due investigation" and was unable to discover Bank of America's super-priority tender to "rebut the presumption of notice" – did not produce one single piece of evidence that it made such an investigation. *See generally*, Dkt. No. 85; *see Berge*, 95 Nev. at 189. Instead, SFR argued that "something must trigger that duty" to investigate. [Dkt. No. 85 at 25]. That something, however, is the recorded language set forth above. Because SFR did not exhaust its duty of inquiry, it failed to rebut the presumption that it had notice of Bank of America's super-priority tender, defeating its bona fide purchaser claim as a matter of law.

**E. EQUITY CANNOT EXPAND SFR'S ENCUMBERED INTEREST INTO FREE AND CLEAR TITLE, AND EVEN IF EQUITABLE BALANCING IS REQUIRED, THAT BALANCING WEIGHS IN BANK OF AMERICA'S FAVOR.**

As expected, SFR has contended that its purportedly free and clear title is unassailable because equity weighs in its favor. Bank of America explained in its opening brief, however, that SFR's equitable argument is misguided. Bank of America incorporates this argument in this reply brief as if more fully stated herein.

…

…

## V. CONCLUSION

This Court should grant Bank of America's Motion for Summary Judgment as to SFR's claims against it because the HOA Statute is facially unconstitutional. In the alternative, this Court should grant Bank of America's Motion for Summary Judgment because Bank of America's tendered the super-priority portion of the HOA lien, and SFR took the Property subject to the Deed of Trust because the tender extinguished the super-priority portion of the HOA lien.

DATED: August 18, 2017.

**AKERMAN LLP**

*/s/ Thera Cooper*
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
THERA A. COOPER, ESQ.
Nevada Bar No. 13468
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans, Inc.*

42655333;1

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Akerman LLP, and that on the 18th day of August, 2017, I caused to be served a true and correct copy of the foregoing **BANK OF AMERICA'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**, in the following manner:

(**ELECTRONIC SERVICE**)  Pursuant to FRCP 5(b), the above referenced document was electronically filed on the date hereof with the Clerk of the Court for the United States District Court by using the Court's CM/ECF system and served through the Court's Notice of electronic filing system automatically generated to those parties registered on the Court's Master E-Service List as follows:

| | |
|---|---|
| Virginia Cronan Lowe<br>Trial Attorney, Tax Division<br>**U.S. DEPARTMENT OF JUSTICE**<br>P.O. Box 683<br>Ben Franklin Station<br>Washington, DC 20044<br>virginiacronan.lowe@usdoj.gov<br>*Attorneys for United States Department of Treasury, Internal Revenue Service* | Howard C. Kim, Esq.<br>Diana Cline Ebron, Esq.<br>Jacqueline A. Gilbert, Esq.<br>Karen L. Hanks, Esq.<br>**KIM GILBERT EBRON**<br>7625 Dean Martin Drive, Suite 110<br>Las Vegas, NV 89139<br>diana@kgelegal.com<br>howard@kgelegal.com<br>jackie@kgelegal.com<br>*Attorneys for SFR Investments Pool I, LLC* |
| Thomas E. McGrath, Esq.<br>Christopher Ammon Lund, Esq.<br>**Tyson & Mendes, LLP**<br>8275 South Eastern Avenue, Suite 115<br>Las Vegas, Nevada 89123<br>tmcgrath@tysonmendes.com<br>*Attorneys for Double Diamond Ranch Master Association* | Holly A. Vance<br>**U.S. ATTORNEY'S OFFICE**<br>100 West Liberty<br>Reno, NV 89501<br>Holly.A.Vance@usdoj.gov<br>*Attorneys for United States Department of Treasury, Internal Revenue Service* |
| Bradley D Bace, Esq.<br>Huong X. Lam, Esq.<br>Steven T. Loizzi, Esq.<br>**ALESSI & KOENIG, LLC**<br>9500 W. Flamingo Rd., Ste. 205<br>Las Vegas, NV 89147<br>brad@alessikoenig.com<br>huong@alessikoenig.com<br>steve@nrs.116.com<br>*Attorneys for Alessi & Koenig, LLC* | Jeanette E. McPherson, Esq.<br>**SCHWARTZER & MCPHERSON LAW FIRM**<br>2850 S. Jones Blvd., Suite 1<br>Las Vegas, Nevada 89109<br>bkfilings@s-mlaw.com<br>*Attorneys for Shelley D. Krohn, Chapter 7 Trustee* |

/s/ *Carla Llarena*
An employee of Akerman LLP

42655333;1