

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALESSI & KOENIG, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD SILVERSTEIN et al.,<br><br>Defendants. | 3:15-cv-00520-RCJ-WGC<br><br>ORDER |

This interpleader action arises out of a homeowner association's foreclosure sale. Pending before the Court are three motions for summary judgment.

I.   FACTS AND PROCEDURAL HISTORY

In 2005, Defendants Richard and Sandra Silverstein purchased real property in Reno, Nevada ("the Property") subject to the Covenants, Conditions, and Restrictions ("CC&R") of Double Diamond Ranch Master Association ("the HOA"). (Compl. ¶¶ 2, 3, 12–15, ECF No. 1-1). When the Silversteins failed to pay regular assessments under the CC&R, Plaintiff Alessi & Koenig, LLC ("Alessi") foreclosed on behalf of the HOA in accordance with Nevada Revised Statutes section ("NRS") 116.3116 *et seq.* (*Id.* ¶¶ 16–20). The sale price was $15,000; $5,400.68 was due to the HOA to satisfy its lien, and $2,500 was due to Alessi for fees and costs, leaving an excess of $7,099.32 ("the Funds"). (*Id.* ¶¶ 20–23).

Alessi filed the present interpleader action in state court, naming potential rival claimants the Silversteins, Countrywide Home Loans, Inc. ("Countrywide"), Waste Management of Nevada, Inc. ("Waste Management"), the City of Reno ("the City"), and the United States (the Internal Revenue Service) as Defendants. Bank of America, N.A., successor by merger to Countrywide ("BOA"), filed counterclaims against Alessi for quiet title, declaratory relief, wrongful foreclosure, unjust enrichment, tortious interference with contractual relations, and breach of the duty of good faith, as well as crossclaims against SFR Investments Pool 1, LLC ("SFR") (the buyer at the HOA sale) for quiet title, declaratory relief, and unjust enrichment. SFR filed crossclaims against BOA, the United States, Nationstar Mortgage, LLC, and the Silversteins for quiet title, injunctive relief, and slander of title. The United States removed and claimed the entire amount of the Funds. BOA amended its pleading, adding crossclaims against the HOA for unjust enrichment, tortious interference with contractual relations, breach of the duty of good faith, and wrongful foreclosure. The Court dismissed the Complaint without prejudice as against the City and Waste Management for failure to timely serve them. The HOA filed counterclaims against Alessi for declaratory relief, indemnity, and contribution. Alessi asked the Court to declare its nonmonetary status under NRS 107.029. BOA objected, and the Court sustained the objection. Alessi asked the Court to certify a question of law to the Nevada Supreme Court and for partial summary judgment. The Court denied those motions. The Trustee filed a notice of bankruptcy on behalf of Alessi, but the automatic stay has since been lifted.

The United States has now moved for summary judgment on the interpleader claim and SFR's crossclaims; BOA has moved for summary judgment on all quiet title claims by and against it; and SFR has moved for summary judgment against BOA, the United States, and the Silversteins.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its

favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the nonmoving party must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

#### A. The United States' Motion

The Court first notes that as the buyer at the sale, SFR has no standing to argue against the United States' claim to the Funds. SFR has no claim to the funds. And the United States does not appear to claim title to the Property or to claim the funds already received by the HOA.

The United States seeks only the interpled Funds. Still, the Court will address the lien priority issue, even though the HOA—probably the only party with standing to make the argument—has not opposed the United States' motion.

The relative priorities of federal tax liens and state law liens is a matter of federal law, *Aquilino v. United States*, 363 U.S. 509, 513–14 (1960), and the priority of such liens are governed by the principle that "the first in time is the first in right," *United States v. McDermott*, 507 U.S. 447, 449 (1993); *United States v. City of New Britain*, 347 U.S. 81, 87 (1954). This is true even if the federal tax lien has not been recorded. *McDermott*, 507 U.S. at 455; *Valley Bank of Nev. v. Henderson*, 528 F. Supp. 907, 913 (D. Nev. 1981) (Claiborne, C.J.).

A federal tax lien becomes "choate," i.e., obtains its priority date, at the time the tax is assessed. 26 U.S.C. § 6322. Here, the relevant federal taxes of approximately $600,000 were assessed in June and December of 2009. (*See* Notice of Federal Tax Lien, ECF No. 77-4; Forms 4340, ECF No. 88-1). A state or local lien does not become choate, i.e., does not obtain its priority date as against a federal tax lien, until the identity of the lienor, the identity of the property subject to the lien, and the amount of the lien have become certain. *Valley Bank of Nev.*, 528 F. Supp. at 913–14 (citing *City of New Britain*, 347 U.S. at 84). The amount of the HOA's lien in the present case first became certain no earlier than the date when the first dues payment became delinquent.[1] SFR adduces a copy of a report indicating $670 in assessments and late

---

[1] The United States is correct that for the purposes of priority as against a federal tax lien, an HOA lien is not perfected until its amount becomes certain, i.e., when a delinquency actually arises. State law providing for retroactive perfection as of the recording of the CC&R, *see* Nev. Rev. Stat. § 116.3116(5), does not control in the present context, *see* U.S. Const. art VI, cl. 2. The amount of a lien is not certain before a delinquency arises simply because the amount due is known beforehand; e.g., if assessments are $90 per quarter, and a homeowner pays only $50, the lien is for $40. The $40 lien arises (under Nevada law) immediately upon the delinquency, with retroactive perfection to the CC&R date. But the perfection date as against a federal tax lien is the date when the amount of the lien is certain, and as seen in this example the amount of an assessment does not necessarily predict the amount of a resulting lien.

fees due through September 2, 2010. (*See* Account History Report, ECF No. 86-1). SFR argues that because the HOA dues were $90 per quarter, the lien must have had some certain amount several quarters earlier. The report includes five line-item entries. The first entry indicates $460 for "Assessments" on January 1, 2010. The second and fourth entries indicate $90 for "Assessments" on April 1, 2010 and July 1, 2010. The third and fifth entries indicate $15 for "Late Fee" on April 30, 2010 and July 15, 2010. This indicates HOA dues of $90 per quarter, with a $15 late fee per quarter. The annual amount due would be $360 based on this evidence ($420 with late fees each quarter). Even assuming no late fees had previously been applied, this evidence could imply that the HOA dues became delinquent as early as October 2008. But this potential inference is foreclosed by the Notice of Default itself, which clearly indicates that the delinquency was owing "*from* January 1, 2010 and all *subsequent* assessments." (NOD, ECF No. 77-11 (emphases added)). No evidence adduced indicates that any delinquency predated January 1, 2010.

In summary, the federal tax lien was first in time, and under federal law, it is therefore first in right. The federal tax lien exceeds the entirety of the interpled Funds. The United States is entitled to summary judgment that it is entitled to the Funds.

### B. BOA's Motion

The Court grants the motion for summary judgment as a matter of law. BOA is entitled to a declaration that the DOT was not extinguished by the HOA foreclosure sale. *See Bank of N.Y. Mellon v. Ravenstar Invs., LLC*, No. 3:17-cv-116, 2017 WL 2588088, at *3–4 (D. Nev. June 14, 2017) (Jones, J.) (citing *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1159–60 (9th Cir. 2016) (holding that the notice scheme under Chapter 116 is facially unconstitutional under the Due Process Clause of the Fourteenth Amendment) (citing *Mennonite*

*Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983))).[2] Nor does SFR have BFP status under state law, and even if it did, it would not obviate the federal due process issue. *See, e.g., Wells Fargo Bank, N.A. v. Beverly*, No. 3:15-cv-601, 2017 WL 2588085, at *3 (D. Nev. June 14, 2017).

C. **SFR's Motion**

The Court grants the motion as against the Silversteins but denies it as against the United States and BOA for reasons given, *supra*. SFR is entitled to a declaration that its title in the Property is superior to the Silversteins' due to the HOA foreclosure sale. SFR has adduced evidence entitling it to a directed verdict on the issue of whether it holds title to the Property, i.e., the CC&R, notice of delinquent assessment lien, notice of default, notice of sale, and trustee's deed, (*see* ECF No. 80-1 to 80-2), and the Silversteins have not adduced any contrary evidence.

///
///
///
///
///
///
///
///
///

---

[2] If the DOT had been extinguished, BOA would have been entitled to the $2,500 of the foreclosure proceeds that was forwarded to Alessi for collection costs and fees. *See Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 72 (Nev. 2016) (holding that, under the version of the statute operative at the relevant time, "collection fees and foreclosure costs" are junior to the first deed of trust). Because the DOT survived the HOA foreclosure sale, however, BOA is not entitled to any proceeds of the sale.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions for Summary Judgment (ECF Nos. 76, 79) are GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 80) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the prevailing parties shall SUBMIT forms of judgment consistent with this order within twenty-one (21) days.

IT IS FURTHER ORDERED that the parties shall SUBMIT a joint status report identifying any claims remaining to be tried within twenty-one (21) days.

IT IS SO ORDERED.

Dated this 30th day of August, 2017.

_____
ROBERT C. JONES
United States District Judge